[L. A. No. 5205.   Department One.—January 27, 1920.]

HANNAH W. MARTIN, Respondent, v. T. J. SHEA, Appellant.

[1] NEGLIGENCE — INJURY TO AUTOMOBILE PASSENGER — STREET EX-CAVATION BY SEWER CONTRACTOR—FINDING—NEGLIGENCE PER SE. In an action against a sewer contractor for injuries to a passenger in an automobile which ran into a trench opened by the defendant for the purpose of facilitating the work, the court, in making the finding that the trench was maintained by defendant unguarded either by lights or barriers in violation of a city ordinance, found in effect that the defendant was guilty of negligence *per se.*

[2] ID.—MANNER AND CAUSE OF AUTOMOBILE ACCIDENT—CERTAINTY OF EVIDENCE.—In this action against a sewer contractor for injuries to a passenger in an automobile which ran into a trench opened by the defendant for the purpose of facilitating the work, and which had been left unguarded by the contractor, it is held the record presents no uncertainty as to how the accident happened or what caused it.

[3] ID.—NEGLIGENCE OF CONTRACTOR—EVIDENCE.—In such action, the plaintiff sufficiently established her case by showing that the contractor maintained the trench between two street-car tracks without any guard or barrier to prevent persons, teams, and automobiles from falling into it, and without any light or lights to give warning of the danger.

[4] ID.—EVIDENCE—PLEADING—ADMISSIBILITY OF CITY ORDINANCE.— In such action, an ordinance of the city requiring the maintenance of barriers and lights about such an excavation was admissible without being pleaded, since the cause of action was not a violation of the ordinance, but the negligence of the defendant in maintaining the trench without barriers or lights, and the ordinance was evidence of such negligence.

[5] ID.—PERMANENCY OF INJURIES—SUFFICIENCY OF EVIDENCE.—In this action it is held the finding that plaintiff's injuries were permanent is sustained by the evidence, and the judgment of one thousand two hundred dollars was not excessive.

[6] ID.—EXCESSIVE VERDICT — SETTING ASIDE BY COURT—APPEAL— FINDINGS—APPLICABILITY OF RULE.—The rule that it is only where the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts, as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment,

that the judge is at liberty to interpose his judgment as against that of the jury, applies equally to the findings of a trial court when considered on appeal.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo. E. Whitaker for Appellant.

Sullivan & Sullivan, Theo. J. Roche and N. E. Conklin for Respondent.

LAWLOR, J.—This is an appeal from a judgment of the superior court of Kern County in favor of the plaintiff in the sum of one thousand two hundred dollars rendered against the defendant in an action for personal injuries sustained by the plaintiff in an automobile accident.

The accident occurred in the city of Bakersfield shortly after dark and some time between 7:30 and 8 o'clock on the evening of April 18, 1913, at the intersection of Nineteenth and I Streets. The plaintiff, an elderly lady, accompanied by her granddaughter, Miss Alice Fleischman, was riding as a guest in a Ford automobile owned and being driven by one Louis Russ. The driver was proceeding down the right-hand side of Nineteenth Street, along which runs a double street-car track, in an easterly direction toward the business center of the city. The defendant, under contract with the city of Bakersfield, was constructing a public sewer in a northerly and southerly direction along I Street, which crosses Nineteenth Street at right angles. For the purpose of this construction a ditch about two feet wide and nine feet deep had been dug. In order to carry the sewer ditch across Nineteenth Street it was necessary to tunnel under the street-car tracks. The ditch, however, was dug into Nineteenth Street in the space on each side of the car tracks, which is eighteen feet wide, to within three and one-half feet of the outside rails. Instead of tunneling the entire distance beneath the tracks and the space between them, about twenty-five feet in all, a shaft or hole about five feet long, more than three feet wide and nine feet deep, was dug between the tracks for the purpose of facilitating the work.

It was into this hole that the left front wheel of the machine in which plaintiff was riding plunged, while the driver was attempting to cross the line of excavation, bringing the machine to a sudden stop and throwing the plaintiff, who was sitting in the rear seat on the left-hand side, forward against the back of the front seat with such force as to break two of her ribs—the fourth and fifth on the left side. She also sustained bruises on her arm and leg on the same side.

Plaintiff alleged in her complaint that "defendant negligently and carelessly failed and neglected to place barriers or guards of any kind around said trench, to prevent persons, teams, and automobiles traveling upon said street aforesaid from falling into said trench, and failed and neglected to give warning, by lights or otherwise, of the existence of said trench in said street"; that neither the plaintiff nor the driver knew of the existence of the trench between the tracks; that as a result of the negligence and carelessness of defendant in failing to place barriers or guards around the trench or to give warning by lights or otherwise, the plaintiff received the injury complained of; that the injuries were permanent and that plaintiff has been damaged in the sum of ten thousand dollars. The prayer was for $50 doctor's fees in addition to the damages alleged.

In his answer the defendant denied that he had for any reason failed to place barriers or guards around the excavations, or failed to mark the place with lights, and denied that the injuries sustained by the plaintiff were in any way the result of negligence or carelessness on his part. He then alleged as a separate defense that plaintiff's injury was the result of her own negligence and carelessness and the carelessness and negligence of the person who was operating the car.

The case was tried before the court sitting without a jury, both parties having waived a jury trial, and the court found that all of the allegations of the complaint were true, except as to the amount expended for the services of a physician, which the court found to be $25 instead of $50; also that the damage sustained amounted only to $1,175, instead of ten thousand dollars, as alleged. Judgment was entered accordingly for one thousand two hundred dollars.

The court found further that plaintiff was riding as the guest of Louis Russ in his automobile; that she had no in-

terest in the machine and no control over it at the time
the accident occurred; that the injuries sustained by the
plaintiff were not caused by her own negligence; that the
injuries to the plaintiff were not caused by the negligence
of the owner and operator of the car; but, on the other hand,
that they were caused by the negligence and carelessness of
defendant, "as particularly set forth in plaintiff's com-
plaint." And the court also found that the trench in
question was maintained by defendant unguarded either by
lights or barriers, in violation of section 32 of ordinance
No. 8 of the ordinances of the city of Bakersfield.

[1] In making this finding the court found in effect that
the defendant was guilty of negligence *per se.* (*Baillargeon*
v. *Myers,* 180 Cal. 504, [182 Pac. 37]; *Fresno Traction Co.*
v. *Atchison, T. & S. F. Ry. Co.,* 175 Cal. 358, [165 Pac.
1013]; *Simoneau* v. *Pacific Elec. Ry. Co.,* 166 Cal. 264, [49
L. R. A. (N. S.) 737, 136 Pac. 544]; *Stein* v. *United R. R.,*
159 Cal. 368, [113 Pac. 663]; *Siemers* v. *Eisen,* 54 Cal. 418;
*Scragg* v. *Salee,* 24 Cal. App. 133, [140 Pac. 706]; *Connell*
v. *Harris,* 23 Cal. App. 537, [138 Pac. 949]; *Fenn* v. *Clark,*
11 Cal. App. 79, [103 Pac. 944].)

Appellant contends that the judgment should be reversed
for the reasons that: (1) The evidence does not show how the
accident happened; (2) The findings are not supported by
the evidence; (3) The court erred in its rulings on the
admissibility of certain evidence; (4) The judgment is ex-
cessive.

[2] 1. As to the appellant's first point we think the
record presents no uncertainty as to how the accident hap-
pened or as to what caused it. Miss Fleischman, a witness
for plaintiff, testified that the machine proceeded along on
the south or right-hand side of Nineteenth Street in an east-
erly direction toward I Street; that as it approached I
Street both she and the driver observed the pile of dirt
directly ahead which had been thrown from the trench; that
the driver remarked: "I guess I'll turn to the track to get
away from that"; that he then turned and went upon the
south track and in attempting to cross the line of the
sewer ditch the left front wheel of the machine went into
the trench which had been dug between the two tracks.
Witness C. J. Sheehan, the foreman of the work at that
point at the time of the accident, introduced as a witness

on behalf of defendant, testified to substantially the same effect. He described the course taken by the machine to the point of the accident much the same as did Miss Fleischman and added: "When the machine was in the ditch one wheel was on that place there and the other wheel was in the hole, one wheel was in the track, the southerly track."

It is an unquestioned fact in the case that the defendant had opened a large, deep hole between the street-car tracks in the middle of a busy street-crossing in the city of Bakersfield, and it is plain that such an opening in such a place is extremely dangerous and a menace to the traveling public unless properly safeguarded by barriers and lights to warn people of the danger and to keep them from falling into the trench. Aside from the requirements of the ordinance, which we will discuss under another head, all that the plaintiff had to do in order to prove a case of negligence against the defendant was to show (1) that the pitfall was maintained without barriers or lights to safeguard the public, and (2) in order to establish the liability of the defendant for her injuries it was necessary for the plaintiff to show that such negligence on the part of the defendant was the direct or proximate cause of her injuries. In order for the defendant to escape liability it was incumbent on him to show either that he was not negligent, or that the injuries were the result of some intervening cause, such as the negligence of the plaintiff herself, or the negligence of the operator of the machine in which she was riding. An attempt was made by the defendant to show he was not negligent, but, so far as the record discloses, no evidence was introduced to establish either contributory negligence on the part of the plaintiff or negligence on the part of the driver.

2. The contention of appellant that the findings are not supported by the evidence is entirely without merit. There was considerable evidence introduced on behalf of the defendant to show that barriers and lights had been placed around the trenches in Nineteenth Street on the north and south sides of the tracks, and this fact was not disputed by the plaintiff, but plaintiff's contention was that around the trench between the tracks, the one into which the machine fell, there were no barriers or guards of any kind to protect the public. An examination of the testimony of the witnesses for both the plaintiff and the defendant shows that

there was also no conflict on this point. All of the witnesses who touched upon the matter at all said that there were no barriers around the opening between the two tracks. We quote from the testimony of the defendant himself on this point: "No boards of any kind were placed at the excavation between the two tracks, couldn't barricade that." Upon this state of the record we are at a loss to understand why counsel is urging on appeal that "the court below erred in finding that the defendant negligently and carelessly failed and neglected to place barriers or guards of any kind around said trench to prevent persons, teams, or automobiles traveling upon the streets from falling into the trench."

Under this same head it is contended that "the court below erred in finding that the defendant failed and neglected to give warning by lights or otherwise of the existence of the trench." On this point Miss Fleischman testified that "There was no light of any kind at or about the opening between the two tracks." E. P. Herrington, a business man in the city of Bakersfield, was introduced as a witness on behalf of the plaintiff and testified that he had passed the scene of the accident a few minutes before the Russ machine went into the hole and that he observed that "there was an opening there between the tracks, not guarded, no lights or trestles to prevent anyone from going in." Witness Norman E. Conklin, called by the plaintiff, also testified that there were no lights to indicate the location of the trench between the tracks, his testimony on this point being as follows: "I observed that particular portion of the trench located between both tracks. There was nothing but some dirt around it. My recollection is that dirt was on the east side of the trench. There was no light there." These were the only witnesses produced by the plaintiff who testified on this point. There were a great many witnesses produced by the defendant, however, who testified positively that a red light was placed on the ground in the center of the space between the two tracks on the west side of the trench, or on the side nearest the machine as it approached. The court, however, found that there was no light there, and under the rule of conflict this finding must be accepted as conclusive.

In paragraph VI of her complaint the plaintiff alleged, among other things, that she and the operator of the auto-

mobile were unaware of the existence of the trench between the two tracks. The court found that all of the allegations of the paragraph were true. The appellant now complains that there is no evidence to support the finding that the driver of the automobile did not know that the trench was there. As we have stated, the operator of the car did not testify. It is not contended, however, that through the absence of any formal proof on this point the appellant has suffered any prejudice, and we do not perceive that he has.

[3] We think plaintiff sufficiently established her case by showing that the defendant maintained the pitfall between the two tracks without any guard or barrier to prevent persons, teams, and automobiles from falling therein and without any light or lights to give warning of the danger. As a separate defense, the defendant alleged that the injury to the plaintiff was due to the negligence of the operator of the car. The burden of establishing this defense rested upon the defendant, and, so far as the record shows, no proof was offered thereunder. Moreover, the court found that the operator of the automobile exercised ordinary care and that the accident occurred without any negligence on his part.

3. Under the head of errors in the rulings of the court on the admissibility of certain evidence, appellant lays special stress on the contention that the court erred in admitting in evidence a copy of section 32 of ordinance No. 8 of the ordinances of the city of Bakersfield, which provides that: "Any person by whom or, under whose immediate direction or by whose immediate authority, as principal or as contractor or as employer, any portion of a public street may be made dangerous is guilty of a misdemeanor, unless he shall erect and, so long as the danger may continue, maintain around the portion of the street or highway so made dangerous, a good and substantial barrier and shall cause to be maintained during every night from sunset to daylight, lighted lanterns at the points of danger sufficient to give fair warning from every point of approach."

The plaintiff alleged that the defendant negligently maintained the opening or trench at Nineteenth and I Streets without any barrier or guard to prevent persons, teams, and automobiles from falling therein, and also negligently failed to place lights at or near said trench or opening so as to

give warning of the existence thereof. It is clear that the ordinance introduced in evidence dealt with this particular subject. There is, therefore, no merit in appellant's contention that the ordinance "is immaterial and does not bear upon the point at issue." In *Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 663, 669, [16 Ann. Cas. 1061, 98 Pac. 1063, 1066], it was said:

"The ordinance hereinbefore referred to was not alleged in the complaint, plaintiff simply alleging negligence in the manner we have specified. It is urged that it was necessary to plead the ordinance in order to make it available as evidence and that the trial court therefore erred in admitting it over the objections of defendant. [4] The precise question thus presented appears never to have been decided by this court, but it appears to us that, upon elementary principles, it was admissible without having been pleaded. *The cause of action here alleged was not a violation of the ordinance, but the negligence of the defendant, and the ordinance was simply evidence offered to show such negligence.* Under our system of pleading, it is both unnecessary and improper to plead the evidence relied on to establish the ultimate facts essential to a cause of action. In *Brasington* v. *South Bend R. R. Co.*, 62 S. C. 325, [89 Am. St. Rep. 905, 40 S. E. 665], an action for damages for injuries for falling into an excavation left unguarded in violation of the provisions of an ordinance where the complaint simply alleged negligence in leaving the excavation unguarded and did not properly allege the existence of any ordinance, it was held that the ordinance was admissible to show the alleged negligence, the court quoting approvingly from an earlier case as follows: 'This is not an action to enforce the performance of any duty imposed by an ordinance of the city of Charleston, or to enforce the payment of any tax or penalty imposed by such ordinance, but the cause of action here is the negligence of the defendant company resulting in the death of the intestate, and the ordinances of the city are only referred to as showing such negligence.' " (Italics ours.)

An examination of the other objections made by appellant under this head shows that they are without sufficient merit to warrant consideration.

4. Plaintiff alleged in paragraph VII of the complaint that: "Since said injuries were inflicted upon said plaintiff,

as aforesaid, said plaintiff has suffered, and will continue for a long period of time hereafter to suffer great pain and mental anguish. Said injuries are permanent in their character, and have permanently injured plaintiff's health, strength and activity.'' The court found that all of the allegations in this paragraph were true. Appellant contends that there is no evidence to support this finding and that, therefore, the judgment of one thousand two hundred dollars is excessive. It is pointed out that about eighteen months after the plaintiff received the injuries which are made the basis of this action she fell from a hammock and sustained a similar injury on the left side, that is to say, that she had two ribs broken, but on the second occasion it was the fifth and sixth ribs, whereas it was the fourth and fifth that were broken the first time. Appellant urges that plaintiff was suffering from the effects of this second injury at the time of the trial, and that this injury formed in a large measure the basis for the award of damages. We are of the opinion that appellant's contentions in this regard are without force. The plaintiff herself testified that following the injuries herein complained of she was confined to her bed for four weeks; that she was attended by Dr. Pawlicki; that ''in May I was in such terrible pain that I called in Dr. Kellogg. He made an examination. I don't remember if he repeated that visit. I left in June for San Francisco. While I was in bed I suffered pain. At the time of my accident I was very nervous. My stomach was so upset that it was forty-eight hours after the accident that the doctor could stop the vomiting. I suffered intense pain all the time in the region over my heart during that time. The vomiting recurred at periods. I was unable to stoop all of nine or ten months. I had made attempts to stoop and had suffered pain when I did. . . . After the accident happened I was bruised all down my left arm, my knee and limb, where I had been thrown in the automobile. There is a mark there yet. While in San Francisco I received medical attention from Dr. Wáldeyer. I think he attended me in January. I called in another doctor previous to that. I think it was in August. The tape around my body was removed three days before I went to San Francisco. It was around the upper part of the body. In January I was very much depressed. I was a very sick and nervous woman. I was ill for the nine or ten months

I was in San Francisco and suffered pain. I didn't suffer
pain in any other portion of my body than already indicated
by me. . . . I have been an invalid ever since I returned to
Bakersfield. I have suffered pain on this left side. It is
a sort of constant sore pain. I can't do anything without
I hold myself, and I cannot turn on my left side in bed.
That continued up until October, 1914. I fell out of the
hammock and broke those ribs again. I think one, I am not
sure."

Dr. Pawlicki testified that he attended plaintiff both when
she was injured in the automobile accident and at the time
she fell out of the hammock. As to the former injury he
said:

"I found Mrs. Martin in bed in rather a nervous condi-
tion. She complained of pain on her left side. Though she
also had some pain in her arms and legs. I found two frac-
tured ribs, the fourth and fifth on the left side. I set the
ribs; that is I put on adhesive plaster. . . . There was some
evidence of pain after the first visit. I don't remember if
the plasters were still on her May 9th, but I imagine they
may have been. The effects of a fracture of ribs in an
elderly person is, of course, shock naturally to a person of
any age. Mrs. Martin was considerably shocked. Her nervous
system was rather in bad condition during the time I attended
her." With respect to the second injury he testified: "I
treated Mrs. Martin a second time for a broken rib, when
she fell off the hammock. She suffered some shock that time.
The shock was due to the second accident. The fifth and
sixth ribs were broken that time. The former was the fourth
and fifth. I think I treated her on that occasion about the
same length of time."

[5] In view of this testimony, and considering the ad-
vanced years of the plaintiff, we cannot hold that there
is no support for the finding that the injuries sustained
by her "were permanent in their character and have per-
manently injured plaintiff's health, strength and activity."
The rule governing the question of excessive damages has
thus been expressed in *Harrison* v. *Sutter St. Ry. Co.*, 116
Cal. 156, [47 Pac. 1019], approved in *Zibbell* v. *Southern
Pac. Co.*, 160 Cal. 237, [116 Pac. 513], and in *Smith* v.
*Royer*, 181 Cal. 165, [183 Pac. 660]: "It is only where the
verdict is so grossly disproportionate to any reasonable limit

of compensation warranted by the facts, as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment, that the judge is at liberty to interpose his judgment as against that of the jury.''

[6]   While this rule was stated with relation to the verdict of a jury, it applies equally to the findings of a trial court when considered on appeal. We cannot say that the judgment herein is ''so grossly disproportionate to any reasonable limit of compensation warranted by the facts, as to shock the sense of justice.''

The judgment is affirmed.

Shaw, J., and Olney, J., concurred.