[Civ. No. 16947. First Dist., Div. One. Nov. 16, 1956.]

MYRON GEORGE SHELDON, a Minor, etc., Appellant, v.
CITY OF BURLINGAME, Respondent.

Carr, McClellan, Ingersoll & Thompson, Luther M. Carr and Richard C. Amick for Appellant.

Ropers & Majeski for Respondent.

AGEE, J. pro tem.*—This is an appeal from a judgment of nonsuit entered against plaintiff at the completion of his evidence in a personal injury action.

On January 1, 1954, appellant, who was then 19 years of age, was working as a dishwasher in a Burlingame restaurant. About 5:15 a. m., Rudolph Ruhl, a police officer employed by the city of Burlingame and on duty as such, came into the restaurant for coffee. He was driving a police patrol car owned by the city and assigned to him to use in the performance of his police duties. Appellant was due to finish work at 5:30 a. m. and he either asked to be driven or Ruhl offered to drive him home. While on the way, the car struck a tree and appellant was injured.

Appellant then brought this action under the provisions of

*Assigned by Chairman of Judicial Council.

section 400 of the Vehicle Code, which makes governmental agencies, including municipal corporations, liable for injuries resulting from the negligent operation of a motor vehicle by any employee when acting in the scope of his employment. The officer was originally joined as a defendant but he was later dismissed and the action proceeded to trial against the city alone.

The complaint is in two counts and the nonsuit was granted as to both. The first count is predicated on the theory that appellant was a "guest" and therefore required to prove wilful misconduct by Ruhl in order to recover. (Veh. Code, § 403.) Respondent contends that the evidence is insufficient to support a finding of wilful misconduct. This requires a discussion of the evidence in the light most favorable to appellant.

After leaving the restaurant, Ruhl drove to the police station, which was three or four blocks away, where he stopped for a few minutes. From there he proceeded down an alley to Primrose Road, on which he turned north toward appellant's home, which was on Floribunda. He came to "either a complete stop or a hesitation stop" at Burlingame Avenue, which was the first intersection reached. The accident happened three blocks farther north, at the intersection of Primrose Road with Bellevue and Douglas Avenues. There were two dips in the pavement at that point. The car was going 35 to 40 miles per hour as it reached the dips. This was much faster than the car had been driven before passing Burlingame Avenue. The car was caused to bounce when it hit the dips. Appellant's head was caused to touch the car's roof when it hit the second dip. Although Ruhl thought his right front tire had blown out, respondent concedes that "we may assume that it was the dips that made him lose control." The car glanced off the curbing on the right hand side and then hit a tree on the opposite or left hand side of Primrose Road. The distance between where the car struck the curbing and the tree is 135 or 140 feet. The front end of the car was badly damaged. Ruhl had driven through this intersection in the same direction hundreds of times and knew that the two dips were there. The dips had not caused him to lose control on any prior occasion. The streets were dry and the car's headlights were lighted.

■ Wilful misconduct means something different from and more than negligence, however gross. (*Porter* v. *Hofman,* 12 Cal.2d 445, 448 [85 P.2d 447].) ■ "Wilful misconduct

implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.'' (*Meek* v. *Fowler,* 3 Cal.2d 420, 426 [45 P.2d 194].) In the instant case there was no knowledge (express or implied) of the danger involved in driving over the dips at 35 to 40 miles an hour. Ruhl had gone through the intersection hundreds of times before the accident without ever losing control of his car. He had no knowledge of the probability of injury to appellant. There was no conscious failure to act in order to avert injury. There was no wanton or reckless disregard of possible consequences. We conclude that the evidence was insufficient to support a finding of wilful misconduct and that the nonsuit as to the first count was therefore proper.

Respondent also urges that the liability imposed by section 400 of the Vehicle Code, i.e., *''negligent* operation'' of a motor vehicle, does not extend to or include liability for wilful misconduct, citing *Weber* v. *Pinyan,* 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407]. (Emphasis added.) There the Supreme Court held that the imputation of liability to an owner for ''negligence in the operation'' of his motor vehicle (Veh. Code, § 402) did not include liability for wilful misconduct. We need not decide this question because of the insufficiency of the evidence as to wilful misconduct.

The second count is based upon negligence. Appellant's position as to this count is that (1) he was a ''passenger,'' not a ''guest,'' and therefore is not required to prove wilful misconduct by the driver; (2) that the ''guest statute'' (Veh. Code, § 403) is not applicable to an action brought under section 400 of that code. Respondent contends to the contrary and also raises the point that the act of taking appellant home was not within the scope of Ruhl's employment. It is logical to discuss this point first, since it applies to any action brought under section 400.

 At common law, the state and its political subdivisions, acting in a governmental capacity, had no liability for the operation of a motor vehicle. (See *Willoughby* v. *Zylstra* 5 Cal.App.2d 297, 303 [42 P.2d 685].) In 1929, section 1714½ of the Civil Code (now Veh. Code, § 400) was enacted and created such a liability. Its provisions are to be construed strictly and a governmental agency is only re-

sponsible thereunder for injury or damage "as the result of the negligent operation of any said motor vehicle by an officer, agent, or employee . . . when acting within the scope of his office, agency or employment; . . ." Respondent correctly states that its liability can only arise if the act of taking appellant home was within the scope of Ruhl's employment. (*Brindamour* v. *Murray*, 7 Cal.2d 73 [59 P.2d 1009].)

The "Rules and Regulations of the Police Department of the City of Burlingame," which had been approved by respondent's city council, provided in part as follows: "It shall be permissible for an officer in a patrol car to pick up some person other than an officer when circumstances indicate that it is proper courtesy and proper police procedure to do so." Respondent's chief of police testified that proper courtesy and police procedure make it permissible for a police officer to pick up women or minors late at night on the streets of Burlingame. Whether the circumstances here indicated that proper courtesy made it permissible for Ruhl to pick up appellant is a question of fact upon which reasonable minds could differ. It was late at night and dark. Ruhl was on patrol and his car was equipped with radio which kept him in touch with the police station. The route he took in taking appellant home was entirely within the city of Burlingame. It can be argued that it is good police practice to establish friendly relations with citizens, particularly minors, when it can be done without departing from regular police assignments. A similar situation was presented in *Carey* v. *City of Oakland*, 44 Cal.App.2d 503 [112 P.2d 714]. There the plaintiff had asked the police officer in charge of a city ambulance to be allowed to accompany a friend, who had been injured and was unconscious, to the hospital. On the way plaintiff was injured. In her subsequent action against the city, the police officer testified that the understanding with the chief of police was that the officer in charge of the ambulance was to use his own discretion in allowing persons to accompany an injured person in the ambulance. The trial court granted a nonsuit on the grounds that at best plaintiff was a guest and that the police officer had exceeded his authority in permitting her to ride in the ambulance. This was held to be error on both grounds, the court saying, at page 510: "With regard to the second issue mentioned by the trial court, the evidence, as it stood at the time the nonsuit was granted, was legally sufficient, in our opinion, to support a finding that it was within the discretionary authority of the

officer under the circumstances to allow Mrs. Carey to accompany her injured friend to the hospital.'' Likewise, we cannot hold in the instant case, as a matter of law, that Ruhl acted outside the scope of his employment or authority. A nonsuit based on this issue would therefore be improper.

Appellant next contends that if Ruhl was transporting him in the patrol car as a part of the latter's duties for which he was employed, then it necessarily follows that appellant's status was that of a passenger and not that of a guest; but that if Ruhl was acting outside the scope of his employment section 400 could not apply and there is no need to consider appellant's status.

The case principally relied upon by appellant is *Smith* v. *Fall River Joint Union H. Sch. Dist.*, 118 Cal.App. 673 [5 P.2d 930]. There the plaintiff was a high school student who was injured while riding in a school bus which collided with another motor vehicle. The school district was held liable under the doctrine of *respondeat superior*. The trial court held that plaintiff was a passenger as a matter of law and refused to instruct the jury on the guest statute. The school district contended that she was a guest because there was no showing that she gave any compensation for the ride or that she or any of her relatives were taxpayers who contributed to the support of the district. The court said, at pages 678-679 : ''It is admitted here that the driver was compensated for the transportation of respondent, but it is insisted by appellant that such compensation must be paid directly by the student, instead of by the High School District. Otherwise the student is a guest. We are not prepared to place such a narrow construction upon the statute. *If the driver is paid to transport a certain class of passengers, then each member of that class is thereby removed from the category of guest*, although actual payment of the fare is not made by the individual passenger. This is particularly true where, as here, the law does not provide for or permit of the payment directly by the student. . . . We hold, therefore, that according to the undisputed evidence adduced in this case, respondent was not a guest under the provisions of the California Vehicle Act and the trial court was correct in refusing to instruct the jury in the manner requested by appellant.'' (Emphasis added.)

The applicability of the Smith case is apparent. In the instant case, Ruhl was compensated by the respondent to perform the duties of a police officer, among which was the trans-

portation in patrol cars of persons who, under the regulations and in the officer's discretion, were entitled thereto. If the trier of fact holds that the act of taking appellant home was a proper exercise of Ruhl's discretion as a police officer, then appellant thereby qualified as a member of a class which Ruhl was paid to transport as a part of his police duties. Just as in the Smith case, there is no provision in the law for the payment for such transportation by the rider. It is true that the class of persons in the Smith case was limited to high school students in the school district, whereas the class in the instant case would be those residents of the respondent city who, in a police officer's discretion, were eligible to be picked up in a patrol car. This makes no difference in principle. We conclude that under the undisputed circumstances of this case, the appellant was a passenger and not a guest as a matter of law, provided the trier of fact finds that Ruhl was acting in the scope of his employment when transporting appellant to his home. If the finding is to the contrary, as already pointed out, appellant cannot recover against the city.

It is doubtful if a situation could arise in which the "guest statute" would be applicable to an action under section 400. When a public employee is driving a public vehicle and transporting a person in it in the performance of his official duties it is difficult to conceive of him as a "host" or a rider as a "guest" within the purpose and intent of the "guest statute." Thus it is very doubtful if the guest law is ever applicable to an action under section 400. In any event, we need not go beyond the instant situation.

■ The evidence was sufficient to support a finding that Ruhl was negligent and that his negligence was a proximate cause of appellant's injuries.

The judgment of nonsuit is affirmed as to the first count and reversed as to the second count. Appellant is to recover his costs on appeal.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 14, 1956, and respondent's petition for a hearing by the Supreme Court was denied January 8, 1957. Schauer, J., was of the opinion that the petition should be granted.