[Civ. No. 27027. Second Dist., Div. One. Aug. 6, 1963.]

KELLY HOP, a Minor, etc., et al., Plaintiffs and Appellants, v. J. ANDY WATERS, as Executor, etc., et al., Defendants and Respondents.

64

Loyal D. Frazier and Karl E. Dame for Plaintiffs and Appellants.

Sheridan, Orr, Barnes, Duval & Benton and Edwin Duval for Defendants and Respondents.

FOURT, J.—This is an appeal by plaintiffs from a judgment for defendants in an action brought in behalf of three minor plaintiffs for the wrongful death of their parents.

A résumé of some of the facts as elicited from the reporter's transcript is as follows: During the evening of April 23, 1960, Ralph Hop and Blanche Hop, the father and mother respectively of the three minor children, for whom this action is instituted, with their friends Richard Peterson and his wife Margaret Peterson went out for the evening in a Thunderbird automobile owned and driven by Richard Peterson. They arrived at a restaurant in Oxnard about 7 p.m., had dinner there and left about 8 or 8:30 p.m. to go elsewhere. At about 1 a.m., April 24, 1960, they returned to the restaurant where they previously had dinner. The operator of the restaurant testified that he knew the two couples very well, that he had on the latter occasion taken Mr. Peterson to the kitchen and prepared a sandwich for him and that Peterson ate the sandwich and drank a couple of glasses of milk and they talked briefly when the others in the group came into the kitchen and apparently decided "to go some place else" and the two couples and a fifth person got into the Thunderbird automobile. The restaurateur when asked about Mr. Peterson's sobriety said: "Mr. Peterson had been drinking and he recovered—I would say, primarily, he was sober, yes." Further, that Peterson was alert, intelligible and looked all right—"perfectly sober."

At about 1:30 a.m. the five persons then went to a place known as the Dunes some distance away to dance. After staying at the Dunes for a time the Hops and the Petersons left in the Peterson car. It apparently was understood at the time of their leaving that the Petersons would return to the Dunes, pick up the person they had brought from the first restaurant to the Dunes, and that thereafter they would proceed back to the restaurant to get said person's car, after which they all would proceed to the beach for a further party.

The Petersons with the Hops after leaving the Dunes ultimately drove on to West Road (which runs generally north and south) and proceeded northerly to the intersection of

West Road and Oxnard Road (which runs generally east and west) where the accident occurred at or about 2 a.m. West Road is a two-lane highway and is straight for a distance of at least three-quarters of a mile to the south of the intersection with which we are concerned. At the intersection West Road jogs about 50 feet to the east at a 90-degree right angle and West Road then continues on north. In other words the intersection is what is sometimes referred to as a right-angle offset intersection. Each road is about 20 feet in width, macadam-paved with center lines painted thereon indicating the traffic lanes. Oxnard Road is a "through highway" and stop signs on West Road were in place at the time of the accident indicating that the traffic on West Road should stop before entering the intersection.

There was one octagonal "stop" sign on a post, the word "stop" was painted on the surface of the pavement at about the southerly edge of Oxnard Road, the words "stop ahead" were written in red letters on a yellow background on a post about 400 feet south of the intersection and the words "stop ahead" were painted on the pavement at or about the same location. There was one diamond-shaped reflector located on the north side of the intersection at a point approximately in line with the prolongation of the center line of West Road. The intersection was unlighted and before the accident had been recognized by certain traffic safety officials as dangerous. However nothing had been done about it with reference to remedying the situation.

Approaching the intersection from the south, West Road drops about 3½ feet in the last 175 feet. The immediate area on both sides of the road appears to be rural and uninhabited with no trees or anything else to obstruct a full view while on the highway. Captain Marsh of the California Highway Patrol testified to the effect that the intersection was not properly signed or lighted under the circumstances as they then existed.

Parallel to Oxnard Road on the northerly side there is a drainage ditch about 30 feet in width and about 8 feet in depth. The sides of the ditch are lined with cement filled sacks to prevent erosion. At the time of the accident Oxnard Road had a posted speed limit of 35 miles per hour. The speed limit on West Road was 65 miles per hour.

It is apparent that Peterson, the driver of the car, did not become aware of the intersection in time to stop, considering his speed and the physical conditions then present, and

plunged the automobile into the drainage ditch killing all four people. The car laid down 150 feet of solid skid marks, 111 feet of which were south of the intersection, 34 feet on Oxnard Road and 5 feet over the dirt berm on the northerly shoulder of Oxnard Road. The car came to rest about 33 inches below the top edge of the cement bags which formed the north bank of the drainage ditch, the top of which is about the same level as the southerly side of the ditch. The force of the collision caused the automobile to be compressed by 3 feet. Both plaintiffs and defendants introduced expert witness testimony. Defendants' witness testified that in his opinion the speed of the car could not have been more than 61 to 64 miles per hour. The wreck was discovered about 6:15 a.m. in the morning of April 24, 1960. When the coroner arrived at the scene shortly afterward he found all four occupants dead, their bodies being cold. Richard Peterson was behind the steering wheel. Ralph Hop was in the front seat and the two women were in the back seat.

At the trial the plaintiffs made a motion for permission to have the jury view the scene of the accident. The motion was denied.

Over objection the defendants introduced photographs into evidence which had been taken of the scene a considerable time after the accident showing some stop signs and reflectors which were not present at the time of the accident.

The court gave among others an instruction of which plaintiffs complain.[1]

The court also gave the following instructions.[2]

---

[1]"DEFENDANT'S REQUESTED INSTRUCTION NO. ——
BAJI 209-U.1    Modified

A person who, having a guest in the motor vehicle which he drives, drives the vehicle at a speed which, in the attendant circumstances, is excessive or reckless, or violates some traffic law, can be guilty of wilful misconduct only if, in so driving he has within his own mind knowledge that serious injury to his guest probably will result, or he so acts with a wanton and reckless disregard of the possible result.

But violating a traffic law, such as running through a boulevard stop sign or driving at an excessive speed, does not, of itself alone, constitute wilful misconduct. It merely raises a presumption of negligence.

*Tucker* v. *Landucci*, 199 Cal.App.2d 762 [371 P.2d 754]
Note to BAJI No. 209-H
BAJI No. 149"

---

[2]"209-H
WILFUL MISCONDUCT—DEFINITION
The words 'Wilful Misconduct' have a meaning in the law in addition to that which they have in common usage. If we were to use the words in their ordinary sense, they would mean simply the

indulging in wrongful conduct by conscious choice. Such conduct might consist of doing something that ought not to be done or in failing to do something that ought to be done. But in order to be a basis for liability to a guest under our law, the misconduct must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results.

(You will note from the definition just given that a driver can be guilty of wilful misconduct without intending to injure his guest or anyone.)

Given       X

Given as Modified  X

Refused

/s/  H

JUDGE OF THE SUPERIOR COURT"

"DEFENDANT'S REQUESTED INSTRUCTION NO. ——

You will also note from the foregoing that wilful misconduct is not the same as negligence, or even what might be called gross negligence. A guest may not recover against the host-driver for negligence, however it might be classified, but only for wilful misconduct, (as defined in these instructions,) and that means intentional, wrongful conduct, done either with knowledge that serious injury to the guest probably will result, or with a wanton and reckless disregard of the possible results.

BAJI 209-J Modified

*Lynch* v. *Birdwell*, 44 Cal.2d 839 [285 P.2d 919]

*Sheldon* v. *City of Burlingame*, 146 Cal.App.2d 30 [303 P.2d 344]''

"DEFENDANT'S REQUESTED INSTRUCTION NO. ——

209-K Modified

KNOWLEDGE OF PROBABILITY OF INJURY MAY BE INFERRED

When there is a question whether a vehicle driver conducted himself with knowledge that serious injury to a guest probably would result from his conduct, proof of such knowledge does not have to be by direct evidence. The jury has a right to INFER that within his own mind the driver had such knowledge, if such an inference may reasonably be drawn from facts in evidence, and if the judgment of the jury so directs.

Note to BAJI No. 209-H and cases cited"

"209-L (Revised)

WHEN JURY MAY FIND FOR PLAINTIFF—WILFUL MISCONDUCT

(No Issue as to Guest Status)

Although you should find that Richard Peterson was negligent and that (he) (she) intentionally did something that was wrongful and which was a proximate cause of the death of Ralph Hop and Blanche Hop, still plaintiff is not entitled to recover unless you further find that Richard Peterson's conduct was done either with knowledge that serious injury probably would result or with a wanton and reckless disregard of the possible results.

Given

Given as Modified  X

Refused

/s/  H

JUDGE OF THE SUPERIOR COURT"

The plaintiffs requested and the court refused to give BAJI 209U.1 as modified by plaintiffs.[3]

It is not disputed that the Hops were guests, that the plaintiffs cannot recover without showing Peterson to have been guilty of wilful misconduct within the meaning of Vehicle Code, section 17158, and that the evidence if properly received is sufficient to support the judgment. The plaintiffs' own witnesses testified that Peterson was not intoxicated and that issue was eliminated as an issue.

Appellants now assert in effect that (1) it was prejudicial error to give the instruction set forth in footnote No. 1, (2) it was prejudicial error to deny the motion to permit the jury to view the scene, (3) it was prejudicial error to admit defendants' photographs of the scene which had been taken after the accident and substantial changes had been made in the area and (4) it was prejudicial error to give defendants' instruction with reference to assumption of risk.

Appellants now argue that they offered BAJI No. 209U.1 as printed. They in fact offered it as the same is set forth in footnote No. 1. The definition which plaintiffs argue is the correct one of what constitutes "wilful misconduct" was given by the court as is set forth in footnote No. 2. Plaintiffs contend that a person need have no intent to cause harm or injury and here the jury was so instructed. See footnote No. 2. ■ It is also argued that the cases hold to the effect that speed, running a boulevard stop or similar acts, when coupled with other circumstances, may amount to wilful misconduct. Such is a correct statement of the law. See *Jones* v. *Ayers*, 212 Cal.App.2d 646 [28 Cal.Rptr. 223]. In this case the jury was so instructed and told that they had the right to infer such knowledge from the facts. See footnote No. 2.

---

[3]"209-U.1

EXCESSIVE SPEED MAY SHOW WILFUL MISCONDUCT

A person who, having a guest in the motor vehicle which he drives, drives the vehicle at a speed which, in the attendant circumstances, is excessive and reckless, can be guilty of wilful misconduct if, in so driving, he has knowledge that serious injury to his guest probably will result, or he so acts with a wanton and reckless disregard of the possible results.

Given _____

Given as Modified _____

Refused     X _____

/s/  H _____

JUDGE OF THE SUPERIOR COURT"

The knowledge required of the defendant is actual knowledge or what in law is regarded as its equivalent. *Hallman* v. *Richards*, 123 Cal.App.2d 274 [266 P.2d 812].

The instruction complained of (footnote No. 1) was, under the circumstances of this case, when taken in context with the other instructions proper. See *Cope* v. *Davison*, 30 Cal.2d 193 [180 P.2d 873, 171 A.L.R. 667].

Shortly before concluding with the presentation of their case plaintiffs moved for permission to have the jury view the scene. The motion was denied. This was a matter within the discretion of the trial judge and this court cannot see from the record wherein the judge abused his discretion. The trial was over two years after the accident and many changes had been made at the intersection including among others the placement of many additional warning devices. See *Snyder* v. *Hollingbery*, 141 Cal.App.2d 520 [297 P.2d 485].

Appellants further assert that it was prejudicial error to introduce into evidence certain photographs which were taken after the accident occurred. No mention is made as to which of the exhibits were improperly introduced. However, we have concluded that in light of the fact that there was only one picture which was objected to by plaintiffs it must necessarily be that particular picture. Suffice it to say that plaintiffs caused to be introduced into evidence, prior to defendants' photograph, a photograph (exhibit 26) which apparently was taken from the north side of the ditch looking southerly down West Road and showing graphically the slope of the road as it approaches Oxnard Road and how the headlights of a car traveling north on West Road would not pick up the stop sign as erected at the time of the accident until the car was within 175 feet or so from the intersection. However, plaintiffs' photograph also shows the back side of a diamond reflector and four other reflectors which apparently were not there at the time of the accident. Furthermore, plaintiffs introduced, after defendants' objected-to photograph was introduced into evidence, a photograph almost identical to defendants', insofar as it depicts the new signs and conditions at the intersection. Too, appellants were basing their case in part upon the testimony of an expert witness who had first visited the scene over a year after the accident occurred and again just a week before the trial. The photograph of the defendants was introduced during cross-examination of plaintiffs' expert witness among other things to show conditions as of the time the plaintiffs'

expert witness observed the area, and under such circumstances we believe it was entirely proper.

Lastly plaintiffs argue that the instruction requested by defendants on assumption of risk (BAJI 209Q) and given by the court was prejudicial error. Plaintiffs had requested and the court gave BAJI 209-C as modified.[4] Plaintiffs having asked for and secured an instruction which on its face calls for a definition of assumption of risk are in no position to complain about the giving of such an instruction. See *Devincenzi* v. *Faulkner*, 174 Cal.App.2d 250 [344 P.2d 322, 74 A.L.R.2d 764]. Furthermore, under the circumstances as the evidence disclosed, the instruction was not such as to create prejudicial error. See *Palmer* v. *Agid*, 171 Cal.App.2d 271 [340 P.2d 303].

The jury in this case could well have believed from the evidence that the driver of the car was not guilty of wilful misconduct and that in fact the accident occurred because of the hazardous condition of the intersection. We cannot say that upon an examination of the entire record there has been a miscarriage of justice within the meaning of article VI, section 4½, of the Constitution of California.

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.

[4]"PLAINTIFF'S REQUESTED INSTRUCTION NO. ——
209-C Modified (# 2)

Plaintiffs claim that Richard F. Peterson at the time of the accident was guilty of wilful misconduct, and that the wilful misconduct was a proximate cause of the injury of which plaintiff's [sic] complain. This claim is denied by the defendant, and to aid you in determining this issue, I shall instruct you on the subject of wilful misconduct. If plaintiff's [sic] should prevail in your finding as to the issue of wilful misconduct as a proximate cause of loss suffered by them, they will be entitled to recover damages unless they are barred from relief by contributory negligence, if any, or by an assumption of the risk, if such there was, under the instructions I give you.
BAJI 209-C Modified"