[Civ. No. 756. Fifth Dist. Mar. 25, 1968.]

CONNIE S. MORENO et al., Plaintiffs and Appellants, v. WILLIE FLORES HERRERA, Defendant and Respondent.

Kane & Canelo and Cyril Viadro for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Coyle & Best and Dudley W. Sheppard for Defendant and Respondent.

CONLEY, P. J.—The widow and four minor children, as sole heirs of Manuel Moreno, sued Willie Flores Herrera for damages caused by his death, allegedly due to the actions or omissions of the defendant as decedent was riding with him in his Chevrolet automobile in the late evening of May 14, 1965. The vehicle operated by the defendant made slight contact with another car, skidded into the concrete abutment of the bridge crossing the Old Arena Canal on Lincoln Boulevard in the vicinity of Livingston and overturned in the canal. In their complaint, as amended, the plaintiffs employed four counts,

420

alleging negligence, wilful misconduct, intoxication and negligent "ownership, maintenance and use" of the vehicle.

Denial of fault and contributory negligence and assumption of the risk were pleaded in defendant's answer. Concededly, there was no evidence showing contributory negligence on the part of Manuel Moreno, and we do not have to concern ourseves with that issue.

Originally, Mrs. Herrera, wife of respondent, was also named as a party defendant, but a nonsuit was granted as to her; the trial court also ordered a nonsuit with respect to any claim of negligence prior to the collision as against the respondent as there was no proof that the decedent gave any consideration for the ride, but the court submitted the case to the jury on the theory of wilful misconduct and also intoxication. The general verdict was for the defendant.

It is not contended on the appeal that wilful misconduct of the defendant driver was proven as a matter of law, or that it was shown without conflict that intoxication was the cause of the accident.

The appellants urge only three reasons why, in their opinion, the judgment should be reversed: (1) they argue that the trial judge erroneously refused to submit to the jury the question whether defendant was negligent in not rendering assistance to Manuel Moreno after the car skidded into the canal, pursuant to section 20003 of the Vehicle Code; (2) that the court was in error in instructing the jury on the issue of assumption of the risk; and (3) that the instruction that the defendant was presumed to have exercised due care was erroneous.

The two occupants of the automobile at the time of the accident were Willie Flores Herrera, the driver, and Manuel B. Moreno, the decedent; both of them were farm laborers with families living in the vicinity of the City of Livingston. In the early evening each had been at the Twin Cities Bar, about a mile and a half south of the canal bridge where the accident happened, part of the time together and part of the time separately; the defendant had also visited the Beer Garden bar in Livingston. Both had had several beers to drink prior to the accident. While the evidence differed from witness to witness, the greater number said that Moreno had shown the effect of the alcohol which he had consumed, but that Herrera was not drunk. For a considerable period, Moreno had tried to induce Herrera to take him to Merced or Livingston to get more beer, and several times Herrera had

refused point blank to do so. However, shortly before 11 p.m., Moreno evidently convinced Herrera to take him to Livingston, for the two were seen together in the Herrera car. Respondent urges that his consistent statements and testimony that Moreno was never in his car must be believed, for they constitute a conflict of evidence as to which the jury's implied finding in favor of the defendant compels a conclusion that Herrera was alone in the automobile at the time of the accident; such a contention, however, relies wholly on barren logic and overlooks uncontradicted evidence that Moreno was seen in the Herrera automobile when it started out from the bar toward Livingston, and that the evidence of the finding of his body in the canal can reasonably be explained only on the assumption that he continued in the car until the crash. We would be blind to human experience and obvious facts if we were to guess, as respondent contends we should, that Moreno's body got into the canal by some means other than through transportation to that point in Herrera's car.

While going down Lincoln Boulevard, Herrera apparently was traveling fast. There is some evidence that his speed was 60 to 65 miles an hour, but there is the estimate of another witness that he was moving at the rate of 80 miles per hour. In his course toward Livingston, he clipped the rear end of a car preceding him, driven by the witness Echevaria, and thereupon the Herrera automobile skidded approximately 200 feet, hit the canal bridge abutment, went into the air and fell on its left side in the canal. People who gathered at the scene of the accident waded into the swift-flowing water and ascertained that Mr. Herrera was in the submerged automobile. They extricated him and, using mouth to mouth resuscitation, finally brought him around. The witnesses at the time said that Herrera was then semi-conscious. Firemen, who were present to help resuscitate Herrera, asked him six or eight times whether anyone else had been in the car and he finally shook his head in a negative response. There was testimony that at the scene of the crash he also told the motor vehicle officers that there had been no one else in the car with him. This statement was repeated by Herrera the next day, in the hospital, and he took the stand in the case itself and swore to the same thing. It was contended throughout by his counsel that he was suffering at the time of the trial from retrograde amnesia, and he testified that he could remember nothing of the accident itself.

The day after the crash, in the late afternoon, the body of

Moreno was discovered in the canal some 150 to 200 yards downstream from the bridge.

The appellants contend that the defendant was guilty of a breach of section 20003 of the Vehicle Code which provides: "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his name, address, the registration number of the vehicle he is driving, the name of the owner, and upon request and if available exhibit his driver's license to the person struck or the driver or occupants of any vehicle collided with or shall give such information and exhibit his license to any traffic or police officer at the scene of the accident and shall render to any person injured in the accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if such carrying is requested by the injured person."

The uncontroverted evidence as to the immediate condition of Herrera after his rescue from drowning compels the patent conclusion that he would not then have been able, even if Moreno had also been promptly rescued from the canal, to carry him or even to make arrangements to carry him to a physician, surgeon or hospital for medical or surgical treatment. Appellants' specific argument rather is that the positive assertion by Herrera by the shaking of his head that no one was with him in the car is the focal point of the claim of negligence on his part. It is understandable, of course, if the claim of retrograde amnesia is believed, that when he shook his head he did not remember that Moreno had been with him, and it is not contended that the driver of a death car is responsible for something that he was not aware of at the time. As defendant was doubtfully truthful concerning what went on during the evening of the accident prior to its occurrence, the appellants urge that he may also have been fabricating his denial that Moreno was with him in the car, and that therefore the jury could have found that he deliberately prevented a timely search for Moreno when he shook his head at the scene of the accident to say that no one was with him.

Let us, therefore, consider whether or not the plaintiffs were entitled to raise this point in connection with their claim that Herrera was negligent.

Examining the pleadings, we find that paragraph VI of the first cause of action in the complaint alleges:

"That on or about the 14th day of May, 1965, defendant WILLIE FLORES HERRERA, drove, operated, maintained and pro-

pelled said 1962 Chevrolet 2-door sedan along and upon Lincoln Boulevard, in the County of Merced, State of California, in such a negligent manner, that as a direct and proximate result thereof, said vehicle struck the rear end of a 1955 Chevrolet Stationwagon, left Lincoln Boulevard and "overturned in a drainage ditch, killing MANUEL B. MORENO, who was then and there a passenger in said vehicle."

Paragraph II of the seventh cause of action reads as follows:

"That on or about the 14th day of May, 1965, on Lincoln Boulevard, County of Merced, State of California, defendants, WILLIE FLORES HERRERA and DOE ONE through DOE FIVE, and each of them, negligently owned, maintained and used said 1962 Chevrolet 2-door sedan; that as a direct and proximate result of the negligent ownership, maintenance and use of said 1962 Chevrolet 2-door sedan, deceased, MANUEL B. MORENO, was thrown from said vehicle into a drainage ditch, suffering and sustaining serious injuries from which he there and then lingered and died on May 14, 1965."

We have quoted all of the essential allegations relative to negligence contained in the complaint; other causes of action incorporate by reference one or the other of these statements of negligence.

The essential portion of the pretrial conference order reads as follows:

"ISSUES REMAINING IN DISPUTE

"1. Heirship.

"2. Ownership of the Chevrolet automobile being operated by the defendant Willie Flores Herrera and whether or not Mrs. Willie Herrera is an owner thereof, and if so whether the automobile was being operated with her consent and/or permission.

"3. Agency.

"4. What was the status of the decedent Manuel B. Moreno, if any, in the vehicle of the defendants.

"5. Willful misconduct.

"6. Intoxication.

"7. Was the defendants' automobile negligently maintained.

"8. Whether willful misconduct and/or intoxication, if any, entered the guest statute and is imputable to the defendant Mrs. Willie Herrera, if she is found to be an owner of the automobile, or an employer or principal of her husband.

"9. Contributory negligence on the part of the decedent.

"10. Proximate cause.

"11. Assumption of risk.

"12. Nature and extent of the damages, if any, suffered by the plaintiffs."

Thus, neither in the pleadings nor in the pretrial conference order is there any specific indication that the plaintiffs are relying upon alleged negligence or failure of duty that occurred after the collision with the Echevaria car and the bridge abutment and the immersion in the canal.

As is said in *Escobedo* v. *Travelers Ins. Co.*, 227 Cal.App.2d 353, 359 [38 Cal.Rptr. 645] : ". . . the negligence involved in failing to render aid is independent of the negligence causing the accident . . . and existed irrespective of any legal responsibility for the original injuries."

The plaintiffs requested only one instruction on this theory as follows: "The California Vehicle Code requires that an automobile driver who injures another must stop and render aid. This duty is imposed upon the driver whether or not he is responsible for the accident, and a violation gives rise to civil liability, if it is a proximate cause of further injury or death. Failure to stop to render aid constitutes negligence as a matter of law, in the absence of a legally sufficient excuse or justification." The proposed instruction is not applicable as the facts of the case do not include a hit-and-run situation or the failure of a tortfeasor to stop after an accident.

Appellants cite *Brooks* v. *E. J. Willig Truck Transp. Co.*, 40 Cal.2d 669, 679-680 [255 P.2d 802], in support of this claim, saying that the duty to stop and render assistance ". . . is imposed upon the driver whether or not he is responsible for the accident, and a violation gives rise to civil liability if it is a proximate cause of further injury or death. (See *People* v. *Scofield*, 203 Cal. 703, 708 [265 P. 914] ; cf. *Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 497 [225 P.2d 497] ; *Hudson* v. *Craft*, 33 Cal.2d 654, 660 [204 P.2d 1, 7 A.L.R.2d 696].) Failure to stop and render aid constitutes negligence as a matter of law, in the absence of a legally sufficient excuse or justification. (See *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 588-589 [177 P.2d 279] ; cf. *People* v. *Scofield*, 203 Cal. 703, 708-709, 711 [265 P. 914] ; *People* v. *McKee*, 80 Cal.App. 200, 203-204 [251 P. 675].)

"The duty of Farnsworth to stop and render aid was put in issue by the pleadings upon which the case was tried. The complaint alleged that defendants were negligent in the operation and control of the truck, that by reason thereof it ran into

and over Brooks, and that as a result of the negligence of defendants in the operation and control of the truck, Brooks was injured and died. Negligence may be alleged in general terms, which means that it is sufficient to allege that an act was negligently done without stating the particular omission which rendered it negligent. (*Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 157 [157 P.2d 1].) Plaintiffs were entitled to prove any act which constituted negligence in the operation and control of the truck. (Cf. *Champagne* v. *A. Hamburger & Sons,* 169 Cal. 683, 689 [149 P. 954].) They were not limited to proof of a breach of common law standards of care but had a right to show statutory violations amounting to negligence. Such violations of specific statutes need not be alleged but may properly be shown under a general averment of negligence. (See *Martin* v. *Shea,* 182 Cal. 130, 137 [187 P. 23]; *Opitz* v. *Schenck,* 178 Cal. 636, 639 [174 P. 40]; cf. *Rannard* v. *Lockheed Aircraft Corp.,* 26 Cal.2d 149, 157 [157 P.2d 1].)''

In 80 A.L.R.2d pages 301-302, the *Brooks* case is thus discussed: ''A judgment against the driver and owner of a truck for the death of a pedestrian who was run over by the truck was upheld in *Brooks* v. *E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669 [255 P.2d 802], against a contention of error in instructing the jury that the conduct of the driver in leaving the scene of the accident without stopping might be considered as a circumstance showing consciousness of responsibility on his part for the accident, and that the weight to be given such circumstance was a matter for the jury to determine. The jury was further instructed that the fact that the driver left the scene of the accident could not, in and of itself, be the basis of a verdict against the defendants, and that if the driver was not guilty of negligence which caused the accident and death, or if the pedestrian was guilty of negligence which contributed to his injury and death, the verdict must be for the defendants, regardless of what the driver did or failed to do after the accident. The court rejected a contention that an instruction on the inference which might be drawn from flight was appropriate only in a criminal prosecution, holding that failure to stop and render aid, as required by the California statutes, was some evidence of a consciousness of responsibility for the accident, and concluding that it was not error to give such an instruction. The court stated that the inference might be refuted and that the driver was entitled to explain his conduct, and agreed that there was er-

ror in sustaining an objection when the driver was asked by his attorney why he did not stop after running over the pedestrian, but concluded that no prejudice resulted from the ruling, since it was acquiesced in by the defendants' attorney, and evidence had been developed elsewhere in the trial that the driver did not stop because he had 'had two beers,' and was afraid that the highway patrol would 'crucify' him if he stopped to report the accident.''

In the instant case, the automobile, of course, was stopped when it fell into the canal, while in the *Brooks* case the driving did continue past the point where the body of the pedestrian was struck. That case involved flight of the tortfeasor; this case does not.

It is our conclusion that the issues made by the complaint and the answer thereto relative to a claim of negligence did not include anything that happened after the accident itself, and that, therefore, the trial court was correct in refusing to admit this additional issue as one which supported the allegation of negligence in the complaint. It is our conclusion that no error was committed in this respect.

■ The next point is that the giving of instructions on the special defense of assumption of the risk was prejudicial error. This point cannot be urged legitimately on the appeal by appellants inasmuch as they themselves offered an instruction on the theory of assumption of the risk. (*Newton* v. *Thomas*, 137 Cal.App.2d 748, 763 [291 P.2d 503] ; *Davis* v. *Nelson*, 221 Cal.App.2d 62, 65 [34 Cal.Rptr. 201] ; *Rostant* v. *Borden*, 192 Cal.App.2d 594, 600-601 [13 Cal.Rptr. 553] ; *Hop* v. *Waters*, 219 Cal.App.2d 62, 70 [32 Cal.Rptr. 786].) While this is a complete answer to the point attempted to be raised on appeal, it is equally true that there could be no reversal on the merits inasmuch as the instructions on this subject were proper. One of them defined assumption of risk, another related to the defense of knowingly riding with a driver under the influence of liquor. If the decedent had knowledge that the operator of the car was under the influence of intoxicating liquor, and that the guest appreciated the risk involved in riding with him, the special defense as pleaded was available. As several witnesses testified that they saw Herrera prior to the accident drinking beer off and on during a number of hours, it is a fair inference that Moreno, even though he himself had been drinking, knew of the approximate extent to which Herrera had consumed beer; Moreno was in a position to know whether or not his friend was under the influence of alcohol

when he asked to go with him to Livingston, and the jury could have found that the decedent assumed the risk involved in the transportation.

The last contention raised by the appellants is that the court committed prejudicial error in giving an instruction that because of Herrera's loss of memory with respect to the events immediately leading up to and involving the accident the defendant during that period was presumed to be "exercising ordinary care and was obeying the law." His doctor testified that, in the accident, Herrera received a cerebral concussion, a contusion and laceration of the head, and six broken ribs; and the physician stated that in his opinion such injuries caused the defendant's retrograde amnesia.

The cases of *Scott* v. *Burke,* 39 Cal.2d 388, 394 [247 P.2d 313], and *Davis* v. *Franson,* 141 Cal.App.2d 263, 267 [296 P. 2d 600], hold that a defendant suffering from amnesia from an accident is entitled to invoke the presumption of due care. While such a presumption usually refers to alleged negligence, there is no sound reason why it is not also applicable to wilful misconduct (*Mosconi* v. *Ryan,* 94 Cal.App.2d 227, 229-230 [210 P.2d 259]), or to intoxication during that period.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1968.