BENJAMIN CASSIUS LARRANCE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 21, 1906.*

1. CRIMINAL LAW—*when method of cross-examination is improper.* Where a witness for the accused in a murder trial has testified that the deceased was advancing on the accused, who warned the deceased not to follow him, it is improper to ask him, on cross-examination, whether he had said anything to that effect in his testimony at the coroner's inquest, without first showing that he had been specially interrogated as to the matter at the inquest, or been directed or given an opportunity to state all that was said and done at the time of the affray.

2. SAME—*when refusal of instruction is reversible error.* In the absence of any given instruction of like import it is reversible error, in a murder trial, to refuse an instruction stating that if the jury "can reconcile the evidence in this case upon any other reasonable theory or hypothesis than that of the defendant's guilt, it is your duty to do so and acquit the defendant."

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

BUCKINGHAM, DYSERT & TROUP, for plaintiff in error.

W. H. STEAD, Attorney General, and J. W. KEESLAR, State's Attorney, (W. T. GUNN, and O. M. JONES, of counsel,) for the People.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Benjamin Cassius Larrance was indicted for the murder of John Crimmins by the grand jury of Vermilion county. Upon a trial he sought to justify the killing on the ground of self-defense and was convicted of manslaughter. He prosecutes this writ of error for the purpose of having the record of the circuit court of Vermilion county reviewed.

Henry Larrance, a brother of plaintiff in error, on October 10, 1905, owned and operated a saw-mill and the mill yard connected therewith. Plaintiff in error was in the employ of his brother, assisting in carrying on the business at the mill. The deceased had some logs in the yard which he had brought there for the purpose of having them sawed but concluded to remove them without sawing, and for that purpose came to the mill on the day last mentioned with a team and two hired men, Robinson and Setzer, and his brother, Jerry Crimmins. In attempting to move one of the logs a single-tree was broken. Deceased started to go to his home to get another to replace the broken one. As he was on the point of going, Henry Larrance said to him that he was owing him (Henry Larrance) some money, and that the account must be settled before the logs were taken away. The deceased assented, and while he was gone for the single-tree plaintiff in error brought Henry Larrance's books to the yard for the purpose of making settlement. North of the saw-mill a short distance there was a logway or driveway running east and west, and just south of this driveway was a pile of logs, each log being parallel with the driveway. When deceased returned with the single-tree Henry Larrance again spoke to him about the settlement, whereupon Henry Larrance, the deceased, and plaintiff in error, who had the books, all sat down on a log in the large pile. Deceased was about the middle of the log east and west. Henry Larrance was on his east side, plaintiff in error was on his west side, and all three faced north. Deceased inquired what the amount was. Henry Larrance replied $2.60. Deceased expressed a desire to see the books. Plaintiff in error exhibited them, and after they were examined the deceased produced his book and announced that it showed just half that much. Plaintiff in error said, "We can't settle then." Henry Larrance by this time had risen to his feet and moved around in front of the deceased, where he stood facing him, and again told him not to move the logs until payment was

made.  Deceased said, "I will move them," and arose to his feet.  Henry Larrance ordered him off the premises.  The deceased replied that he would go when he got ready.  Henry Larrance then threw off his coat and told the deceased to get out of there or he would whip him.  Jerry Crimmins stepped between Henry Larrance and the deceased, saying, "Boys, there is nothing to fight about."  Thereupon the deceased drew a revolver from his pocket and held it in his right hand, seeing which the plaintiff in error also drew his revolver and said to the deceased, "Drop it!" and walked around in front of the deceased, keeping his face toward him, passing between the deceased and Henry Larrance, repeating the words, "Drop it!"

As to what next occurred the evidence is in conflict.  There were present at this time, the deceased, plaintiff in error, Henry Larrance, Jerry Crimmins, Setzer, Robinson, John Larrance, (the father of the plaintiff in error,) and Charles Baird.  John Larrance, however, was not a witness on the trial of the cause.

Jerry Crimmins testified that when the plaintiff in error had reached a point directly in front of the deceased he fired two shots at John Crimmins, both of which took effect; that the latter then walked away a few steps, fell down and immediately died without speaking a word; that at the time the shots were fired, he, Jerry Crimmins, was about fifteen feet away from his brother, engaged in a controversy with Henry Larrance.

Robinson testified that after the plaintiff in error passed from the west side of the deceased around in front of him and to a point north-east of him, plaintiff in error, though pointing his revolver at the deceased, kept backing away from him to the east, exclaiming, "Drop it!" that the deceased followed him twelve or fourteen feet, until the deceased reached a point about four feet east of the east end of the log on which they had been sitting; that when he reached that point, he, John Crimmins, gripped his revolver, raising

it and pointing it toward the plaintiff in error, when the latter fired the two shots that killed the deceased.

The testimony of each Setzer, Henry Larrance, Charles Baird and plaintiff in error is harmonious with that of Robinson in reference to the deceased following plaintiff in error as the latter retreated, after he had passed to the east of the deceased. Setzer said that as plaintiff in error backed away he said to deceased, "Drop it," and "Don't follow me;" that both of these expressions were several times repeated, notwithstanding which the deceased continued to advance upon plaintiff in error with the revolver in' his hand. Charles Baird testified that immediately before the shooting the deceased was advancing upon plaintiff in error and raised his revolver and pointed it toward the latter, when the fatal shots were fired. Henry Larrance says that as his brother went backward, commanding the deceased to drop his revolver, the latter followed, and as they proceeded in this manner Crimmins pointed his revolver at the plaintiff in error, when the latter fired. Plaintiff in error says that when he first commanded deceased to drop the revolver, the latter replied, "I'll pick you first," and pointed his revolver toward plaintiff in error, who then replied, "Johnny, don't do that;" that after he (Larrance) had passed to the east the deceased advanced and plaintiff in error kept going backward, and called out two or three times, "Johnny, don't you follow me;" that the deceased continued to advance and lowered his revolver a little and then raised it again, pointing it directly at the plaintiff in error, when the latter fired.

Immediately after the shots were fired, and after the deceased had fallen to the ground, plaintiff in error called those present to witness that he had acted in self-defense, said that he was going to Danville to give himself up, and in accordance with that announcement took his departure and surrendered himself to the sheriff.

It is first urged that the verdict of the jury is clearly against the manifest weight of the evidence, and that for

this reason the judgment should be reversed. A careful examination of the record leads us to the conclusion that this error is not well assigned. We regard the case, however, as being very close on the evidence, and for this reason the rights of the parties in reference to certain questions which arose on the trial could be made effective only by rulings made in exact accord with the law.

A coroner's inquest was held on the evening of the day of the homicide, at which Henry Larrance testified. Upon cross-examination on the trial in the circuit court, for purposes of impeachment, he was asked by the prosecutor whether he related anything at the inquest about his brother having said to John Crimmins, "Don't follow me," and whether he said anything at the inquest about John Crimmins having advanced upon his brother. After an objection to this line of examination was overruled, the witness replied that he did not remember whether he had, at the coroner's inquest, testified anything in reference to these matters.

Based upon this testimony, counsel for the prosecution, in his argument to the jury, made use of the following language:

"Henry Larrance now tells you that at the time that this shot was fired John Crimmins was advancing upon Cassius Larrance and Cass Larrance was retreating. At the coroner's inquest I asked him if he made any such statement as that, and he says he don't remember. He didn't make any such statement as that or he would have told you so. That part of the statement is different now from what it was on the evening of this shooting before the coroner, that John Crimmins was advancing upon his brother and attempting to shoot him. Absolutely none. And now, when this case comes to trial, he says that John M. Crimmins was advancing upon his brother. And then this little Baird boy—there is some things about his evidence. He tells you and they would have you believe that he says that Crimmins was advancing upon Mr. Cassius Larrance at the time this shot was

fired. It is up to this jury to say whether or not a man in this county can be shot down in cold blood and yet the man go scot-free. It is no wonder that we are pointed at as a county of law-breakers—" Objection was then made and overruled, whereupon counsel continued: "As a county of murderers. We have a right to refer to a matter that is of common knowledge." Whereupon an exception by plaintiff in error was noted.

We think the method of the cross-examination above referred to was improper and that the objection made thereto should have been sustained. The proper matter for investigation in reference to the testimony of Henry Larrance before the coroner's inquest was not, in the first instance, whether or not he then testified that plaintiff in error told John Crimmins not to follow him and that John Crimmins advanced upon plaintiff in error prior to firing the shots, but the cross-examination should first have been addressed to showing that Henry Larrance was given an opportunity to testify in reference to these matters; that he was either interrogated about them specifically, or that he was directed, or invited, or given an opportunity to state all that was said and done at the time of the affray. (30 Am. & Eng. Ency. of Law,—2d ed.—1118; *Commonwealth v. Hawkins,* 3 Gray, 463; *Hyden v. State,* 31 Tex. Crim. 401.) Unless he was so specifically interrogated, or was so directed, invited or given opportunity at the inquest, it was entirely immaterial whether he then made the same statements on this subject that he made on the trial in this case. We think this cross-examination, when taken in connection with the remarks of counsel which we have above set out, was prejudicial to the rights of the accused.

It is apparent from the testimony in reference to the occurrences at the time of the shooting, that the jury should have been accurately and fully instructed in reference to the law of the case. The court refused the twenty-fourth instruc-

tion asked by plaintiff in error, which was in the words following:

"The jury are instructed by the court, that if they can reconcile the evidence in this case upon any other reasonable theory or hypothesis than that of this defendant's guilt, it is your duty to do so and acquit the defendant."

We think this instruction was a correct statement of the law, and in the absence of any other of like import its refusal in this case was reversible error.

Other criticism of the action of the circuit court in passing upon instructions is without merit.

The court improperly admitted evidence of a statement made by John Larrance immediately after the death of John Crimmins which indicated that the shooting was premeditated, and improperly excluded evidence offered by plaintiff in error which would have tended to rebut any presumption of malice which the jury might have drawn from the fact that plaintiff in error was armed with a revolver. Defendant in error insists that no prejudice resulted from these errors for the reason that the jury returned a verdict of guilty of manslaughter, which amounted to a finding that plaintiff in error was not animated by "malice aforethought." Whether in the present state of the record these errors last mentioned would require reversal we deem it unnecessary to decide, as we apprehend they will not arise upon another trial of the case.

Other questions are presented, but in view of conclusions above reached we will not extend this opinion by discussing them.

The judgment of the circuit court will be reversed and the cause remanded.           *Reversed and remanded.*