[S. F. No. 18646.   In Bank.   Apr. 14, 1953.]

ANTOINETTE BROOKS et al., Respondents, v. E. J. WILLIG TRUCK TRANSPORTATION COMPANY (a Corporation) et al., Appellants.

Dana, Bledsoe & Smith, Paul C. Dana and Morton B. Jackson for Appellants.

James C. Purcell and Michael Riordan for Respondents.

GIBSON, C. J.—Plaintiffs seek recovery for the wrongful death of John Brooks who was struck and run over by a truck which belonged to defendant company and was being driven by its employee, defendant Farnsworth. Defendants appeal from a judgment entered on a jury verdict for plaintiffs contending that prejudicial errors were committed by

the trial court in admitting and excluding evidence and in instructing the jury.

The accident occurred around 11 o'clock at night on a level, unlighted portion of U. S. Highway 101 near its intersection with State Route 37. At this point, U. S. 101 lies in open country and is a four-lane north-south highway with its northbound lanes separated from its southbound lanes by a dividing strip. Decedent Brooks, a chief petty officer in the Navy, was in the area on foot and was apparently attempting to secure a ride north to Eureka where his wife and child lived. There were no eyewitnesses to the accident other than defendant Farnsworth, who was driving an empty truck northward on Highway 101. He was travelling in the outside lane at a speed of approximately 45 miles per hour when he first saw Brooks about 250 feet ahead. Farnsworth gave two versions of Brooks' location and movements immediately prior to the time of the impact. He testified that he saw Brooks leave the dividing island and start eastward across the inner lane of the northbound part of the highway. In his statement to an officer the day after the accident Farnsworth said that Brooks was on the eastern edge of the highway, and that he saw him begin to walk westward across the outer lane. Farnsworth blew his horn and reduced his speed but did not attempt to stop. Brooks continued walking toward the center of the northbound highway and gave no indication that he was aware of the truck's approach. When some 150 feet away from Brooks, Farnsworth began to move the truck into the inner lane, and the impact occurred at a point on the white line separating the two lanes. The truck was then travelling 15 to 20 miles per hour. Farnsworth said he felt the wheels of the truck go over Brooks, but he did not stop to render aid or report the accident.

When apprehended by the police the following day, Farnsworth at first denied all knowledge of the accident but later admitted to the arresting officer that he had run over decedent. He said that he did not stop after the accident because he had "had two beers" earlier in the day and was afraid that if he stopped and called the highway patrol the officers would smell the odor of alcohol on his breath and would "crucify" him. He also told the officer that he failed to stop because he had seen animals that had been crushed by vehicles on the highway and he was certain he had killed Brooks and did not want to see the body.

An Army chaplain, who was one of the first persons to arrive at the scene after the accident, testified that Brooks was lying in the inner lane of the northbound highway with one leg extending across the white line into the outer lane. He fixed Brooks' position at a point which was approximately 75 feet north of the place of impact. The chaplain gave Brooks conditional absolution and then went down the highway to call an ambulance. When he returned 15 or 20 minutes later several police officers and a few motorists had gathered at the scene of the accident, and he did not notice the location or condition of the body. On the witness stand he was shown a picture of Brooks taken at the scene of the accident by a photographer who accompanied the coroner, and he testified that the body, as shown by the picture, appeared to be more mutilated than it was when he found it. The chaplain was unable to say with certainty whether Brooks was dead or alive when he found him, but said, "I have seen boys overseas mutilated far worse than he was and still alive. . . ."

The officers who arrived after the chaplain had left to call the ambulance testified that they found Brooks at a point some 195 feet north of the place where the initial impact had occurred. Brooks was dead. His body was badly mangled and eviscerated and lay entirely inside the inner lane.

An examination of the truck disclosed an imprint of cloth in the valley between the right front fender and the right side of the hood. Flecks of blood were found on the grillwork in front of the radiator, and the right front headlight was broken. There was evidence that the vehicle would stop in the "turn of a wheel," including "reflex time," if all its air brakes were applied when it was going about 15 miles per hour, and that it would stop within 15 to 20 feet if the brakes were applied at a speed of 35 miles per hour.

A coroner's chemical analysis of a specimen of decedent's blood indicated an alcoholic content of .22 of 1 per cent, and defendants produced two doctors who testified that in their opinion, based upon the coroner's finding, Brooks was "under the influence of alcohol" at the time of the accident. On the other hand, attendants at the toll plaza of the Golden Gate Bridge who saw and talked to Brooks about an hour before the accident testified that he was sober at that time. And the chaplain, who knelt alongside Brooks and put his lips to his ear, did not notice any odor of alcohol.

The evidence is sufficient to support the judgment, and we turn now to defendants' claims of error.

Defendants attempted to impeach the testimony of the arresting officer by showing that on earlier occasions, when he discussed the accident with the district attorney and when he testified at a naval inquiry and at a preliminary hearing on a criminal charge, the officer had not mentioned Farnsworth's statement that he had "had two beers" and was afraid that the highway patrol would "crucify" him if he stopped to report the accident. It is not disputed that Farnsworth had been drinking; he admitted on the stand that he had had "three or four beers" on the afternoon before the accident. The court refused to permit the attempted impeachment, it appearing that on the earlier occasions the officer was not specifically questioned as to whether he had discussed drinking with Farnsworth and was not asked to state all of the reasons given by Farnsworth for his failure to stop. The ruling was proper. ■ A witness may not be impeached by showing that he omitted to state a fact or stated it less fully at a prior proceeding unless his attention was called to the matter at that time and he was then asked to testify concerning the very facts embraced in the questions propounded at the trial. (*People* v. *Casanova,* 54 Cal. App. 439, 446-447 [202 P. 45]; *Ball* v. *State,* 43 Ariz. 556 [33 P.2d 601, 602]; *Larrance* v. *People,* 222 Ill. 155 [78 N.E. 50, 51-52]; *Commonwealth* v. *Hawkins,* 69 Mass. 463, 465; *State* v. *Ogden,* 39 Ore. 195 [65 P. 449, 452-453].)

■ The following instruction was given to the jury at plaintiffs' request: "You are instructed that the operator of a motor vehicle is not necessarily exempt from liability . . . by showing simply that at the time of the accident he was running at a rate of speed allowed by law. He still remains bound to anticipate that he may meet persons at any point of the roadway and he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his vehicle under such control as will enable him to avoid a collision with another person using proper care and caution, and, if the situation requires, he must slow up and stop." The language used in this instruction was taken almost verbatim from a statement of this court in passing on the propriety of a nonsuit in the case of *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 P. 125]. The statement formulates an absolute standard of conduct in that it provides that the operator of a motor vehicle *must* keep it under such con-

trol as will enable him to avoid a collision. The instruction should have been phrased in terms of a duty to use ordinary care. However, the jurors were elsewhere informed in a number of instructions that the only duty imposed upon Farnsworth was that of exercising the care of a person of ordinary prudence and caution, and under the facts of this case it does not appear that a miscarriage of justice resulted.

The jury was instructed that the conduct of Farnsworth in driving away from the scene of the accident might be considered as a circumstance showing consciousness of responsibility on his part for the accident and death of Brooks and that the weight to be given such circumstance was a matter for the jury to determine. The jury was further instructed that the fact that Farnsworth left the scene of the accident could not, in and of itself, be the basis of a verdict against defendants, and if Farnsworth was not guilty of negligence which caused the accident and death of Brooks, or if Brooks was guilty of negligence which contributed to his injury and death, the verdict must be for defendants, regardless of what Farnsworth did or failed to do after the accident. Defendants argue that an instruction on the inferences which may be drawn from flight is appropriate only in a criminal prosecution. (See Pen. Code, § 1127c.) We have found no case in this state where an instruction of this type has been given in a civil action, but it has been held in other jurisdictions in negligence cases that failure to stop and render aid is some evidence of a consciousness of responsibility for an accident. (See *Kotler* v. *Lalley*, 112 Conn. 86 [151 A. 433-434]; *Shaddy* v. *Daley*, 58 Idaho 536 [76 P.2d 279, 281-282]; *Langenstein* v. *Reynaud*, 13 La.App. 272 [127 So. 764; 766]; *Battle* v. *Kilcrease*, 54 Ga.App. 808 [189 S.E. 573].) Such an inference appears to be a reasonable one, and it was not error to give the instruction. The inference, of course, may be refuted, and a defendant is entitled to explain his conduct. In this connection, defendants complain that the court sustained an objection when Farnsworth was asked by his attorney why he did not stop after running over Brooks. The ruling of the court was, of course, error, but it was acquiesced in by defendants' attorney who stated that he thought it was correct and made no offer of proof. Moreover, Farnsworth's explanation of his failure to stop was developed elsewhere in the evidence, and it does not appear that any prejudice resulted from the ruling.

■ The jury was told that Brooks' conduct was governed by section 562 of the Vehicle Code, which requires pedestrians who are crossing a highway at a place other than a crosswalk to yield the right of way to vehicles, but that it was not contributory negligence as a matter of law for the deceased to cross the highway at the place where he was struck, that the law presumes he did yield the right of way, and that the fact that he was struck does not, of itself, show that he failed to do so. Defendants claim that the instruction, in effect, erroneously told the jury that Brooks did not violate the statute and was not guilty of contributory negligence. We do not agree that the instruction had this effect. It did not take from the jury the factual questions of whether Brooks violated the statute by failing to yield the right of way or whether his conduct was a proximate cause of his injury and death, and these questions were submitted to the jury under instructions proposed by defendants. The jurors were also told that they were the sole judges of whether Brooks was negligent and that they were not bound by the presumption that he was exercising due care if they believed the facts to be otherwise.

■ Two instructions were requested by defendants as follows: Number 49 reads, "I instruct you that if you believe from a preponderance of the evidence that the deceased was intoxicated and that his intoxication entered into his conduct to an extent that caused him to conduct himself otherwise than would a person of ordinary prudence, then and in that event you must find that the deceased, John Misher Brooks, was negligent." Number 51 reads, "You are instructed that Section #565 of the Vehicle Code of the State of California, in force and effect at the time of the happening of this accident, provided as follows: '. . . It shall be unlawful for any pedestrian who is intoxicated to such an extent as to create a hazard to himself or others to walk or be upon any roadway.' " The court gave instruction 49 as requested but did not give instruction 51, and defendants claim error. The court may well have believed that giving both instructions would confuse the jurors and that number 49 was more favorable to defendants since it would permit the jury to find that Brooks was negligent even though his condition was not such as "to create a hazard" on the highway within the meaning of the statute. Under the circumstances, the failure to instruct on section 565 did not constitute reversible error.

■ Defendants contend that it was error to instruct the jury on the doctrine of last clear chance, claiming that under the evidence the doctrine was not applicable either to the time before the initial impact or to any subsequent period. They argue that the interval of time in which Farnsworth could have acted after becoming aware that Brooks was in a position of peril was so short that Farnsworth did not have a last clear chance to avoid striking him. It could be reasonably inferred from the evidence, however, that Farnsworth knew that Brooks was in a position of peril and was unaware of the approaching danger and that Farnsworth could have prevented the accident by bringing the truck to a stop. (See *Hoy* v. *Tornich,* 199 Cal. 545, 552, 553 [250 P. 565].) Moreover, if, as Farnsworth stated to the officer, Brooks left the east side of the highway and was walking west across the outer lane, Farnsworth could have avoided striking him by reducing the speed of the truck and remaining in the outer lane. In relation to the things that occurred immediately after the impact, the jury was told that the doctrine of last clear chance would apply if Brooks were still alive and if Farnsworth, knowing that Brooks was in a perilous and helpless position, could have stopped the truck in time to prevent the wheels from running over him. It could be inferred from the evidence that Brooks did not fall under the truck immediately after he was struck but, instead, was carried in the valley between the hood and the right front fender for a distance of 75 to 195 feet. Farnsworth testified that the truck was travelling 15 to 20 miles per hour when he struck Brooks, and there was evidence that at such a speed the truck could have been stopped "within the turn of a wheel," including "reflex time," if the air brakes had been fully applied. An instruction on last clear chance was proper.

■ The court instructed the jury that Farnsworth, knowing Brooks had been struck, was under a duty to stop immediately and render such aid as was reasonably necessary to save his life or prevent aggravation of his injuries, that judgment should be for plaintiffs if Farnsworth's breach of the duty was a proximate cause of the death of Brooks, and that the duty to stop and render aid did not depend upon the negligence of Farnsworth in causing the accident or the freedom of Brooks from contributory negligence but existed irrespective of any legal responsibility for the original injuries. This is a correct statement of the law. ■ One who negligently injures another and renders him helpless is bound to

use reasonable care to prevent any further harm which the actor realizes or should realize threatens the injured person. This duty existed at common law although the accident was caused in part by the contributory negligence of the person who was injured. (See Rest., Torts, § 322; Prosser on Torts [1941], p. 194.) ▮ Sections 480* and 482† of the Vehicle Code require an automobile driver who injures another to stop and render aid. This duty is imposed upon the driver whether or not he is responsible for the accident, and a violation gives rise to civil liability if it is a proximate cause of further injury or death. (See *People* v. *Scofield*, 203 Cal. 703, 708 [265 P. 914]; *cf. Nunneley* v. *Edgar Hotel*, 36 Cal. 2d 493, 497 [225 P.2d 497]; *Hudson* v. *Craft*, 33 Cal.2d 654, 660 [204 P.2d 1, 7 A.L.R.2d 696].) ▮ Failure to stop and render aid constitutes negligence as a matter of law, in the absence of a legally sufficient excuse or justification. (See *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 588-589 [177 P.2d 279]; *cf. People* v. *Scofield*, 203 Cal. 703, 708-709, 711 [265 P. 914]; *People* v. *McKee*, 80 Cal.App. 200, 203-204 [251 P. 675].)

---

*Section 480 of the Vehicle Code provides: ''The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop such vehicle at the scene of such accident and shall fulfill the requirements of Section 482(a) hereof and any person failing to stop or to comply with said requirements under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars ($5,000) or by both.''

†Section 482 of the Vehicle Code provides in part: '' (a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his name, address and the registration number of the vehicle he is driving, the name of the owner, and shall upon request and if available exhibit his operator's or chauffeur's license to the person struck or the driver or occupants of any vehicle collided with or shall give such information and exhibit such license to any traffic or police officer at the scene of the accident and shall render to any person injured in such accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person. In the event of death of any person resulting from an accident, the driver of any vehicle involved must, after fulfilling the requirements of Section 480 of this code and the foregoing requirements of this subsection, and if there be no traffic or police officer at the scene of the accident to whom to give the information required by this subsection, shall, without delay, report such accident to the nearest office of the California Highway Patrol or office of a duly authorized police authority and submit with such report the information required by this subsection. . . .''

The duty of Farnsworth to stop and render aid was put in issue by the pleadings upon which the case was tried. The complaint alleged that defendants were negligent in the operation and control of the truck, that by reason thereof it ran into and over Brooks, and that as a result of the negligence of defendants in the operation and control of the truck, Brooks was injured and died. █ Negligence may be alleged in general terms, which means that it is sufficient to allege that an act was negligently done without stating the particular omission which rendered it negligent. (*Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 157 [157 P.2d 1].) █ Plaintiffs were entitled to prove any act which constituted negligence in the operation and control of the truck. (*Cf. Champagne* v. *A. Hamburger & Sons*, 169 Cal. 683, 689 [149 P. 954].) They were not limited to proof of a breach of common law standards of care but had a right to show statutory violations amounting to negligence. █ Such violations of specific statutes need not be alleged but may properly be shown under a general averment of negligence. (See *Martin* v. *Shea*, 182 Cal. 130, 137 [187 P. 23]; *Opitz* v. *Schenck*, 178 Cal. 636, 639 [174 P. 40]; *cf. Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 157 [157 P.2d 1].) █ Farnsworth's action in driving on without stopping after the accident may reasonably be regarded as a part of the operation and control of the vehicle, and under the allegations of the complaint plaintiffs were entitled to prove the direct consequences of his conduct in driving on without stopping, namely, his failure to render aid or do anything to prevent further injury to Brooks. Farnsworth's failure to stop and render aid, in violation of sections 480 and 482 of the Vehicle Code, constituted negligence as a matter of law, and, under the pleadings, it was appropriate to show such negligence and the proximate results thereof.

The record does not, as asserted by defendants, compel a finding that Brooks was dead before Farnsworth drove away from the scene of the accident, and the hit and run instruction was warranted under the evidence.

Defendants complain that certain rulings of the trial court led them to believe that all questions of liability for failure to stop and render aid had been excluded from the case. More than one year after Brooks' death plaintiffs, pursuant to permission, filed an amended complaint. The first count contained the general allegation of negligence in the operation and control of the truck and was virtually identical with the

original complaint. The second, third and fourth counts incorporated the allegations of the first count and alleged respectively (a) that in violation of section 480 of the Vehicle Code, Farnsworth failed to stop and continued driving, by reason whereof Brooks was carried, dragged, crushed and mangled by the vehicle; (b) that, in violation of sections 480 and 482, Farnsworth drove away from the scene of the accident without stopping to render aid, leaving Brooks on the highway so grievously injured that he died by reason of want of medical treatment and the failure of Farnsworth to render assistance; and (c) that, in violation of sections 480 and 482, Farnsworth drove away from the scene of the accident leaving Brooks lying on the highway in a helpless condition, and thereafter Brooks was struck and run over by another vehicle and died as a result thereof. Defendants demurred to the last three counts on the ground that they were barred by the statute of limitations. The demurrer was sustained without leave to amend, and the case proceeded to trial on the first count. Near the end of the presentation of defendants' case, plaintiffs moved to amend the complaint to conform to proof by adding allegations which were substantially the same as those to which the demurrer had been sustained. The motion was denied.

As we have seen, the second, third and fourth counts of the amended complaint alleged specific acts and omissions which were a part of the operation and control of the vehicle, and since the facts alleged were not unrelated to those set forth in the original complaint, the statute of limitations was not a bar and defendants' demurrer should not have been sustained on that ground. (See *Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713, 718 [128 P.2d 522, 141 A.L.R. 1358]; *Stockwell* v. *McAlvay*, 10 Cal.2d 368, 375 [74 P.2d 504].) The ruling on the motion to amend to conform to proof was properly denied upon the ground that the matters covered by the proposed amendments were in issue under the general allegation of negligence. Even if it be assumed that defendants are in a position to complain of the rulings they have failed to show that they were in fact misled or damaged. In his opening statement defendants' counsel told the jurors that Brooks was killed by the weight of the truck passing over him and that Farnsworth drove on without stopping, "knowing that the man was dead." Farnsworth was asked numerous questions by his counsel which were obviously designed to estab-

lish the fact that Brooks' death was caused by the wheels of the truck passing over his body immediately after the initial impact. In cross-examining the arresting officer defendants developed the fact that Farnsworth said that he felt the wheels go over the man and was ''certain'' he had killed him and did not want to see the body. Defendants do not claim that they could have produced any other evidence as to the time and cause of Brooks' death. It is not disputed that Farnsworth drove on without stopping, and there is no claim that there was any legal justification for his conduct. (See *People* v. *McKee*, 80 Cal.App. 200, 203-204 [251 P. 675].)

Other claims of error made by defendants are entirely without merit and need not be discussed.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.