Filed 12/17/14  Yoo v. Nick's Travel and Tours CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| UI KEUN YOO,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>NICK'S TRAVEL AND TOURS, INC.,<br><br>　　　　Defendant and Appellant. | B250853<br>(Los Angeles County<br>Super. Ct. No. GC046865) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Bert Glennon, Jr., Judge.  Affirmed.

　　　　Snyder Law, Kenneth H. Martin and Jessica Farley for Defendant and Appellant.

　　　　The Arkin Law Firm and Sharon J. Arkin; Law Offices of Lee & Associates, Jae Y. Lee and Daniel Hoffman for Plaintiff and Respondent.

Respondent Ui Keun Yoo brought suit against appellant Nick's Travel And Tours, Inc. (Nick's Travel or appellant) and codefendant H&C Paradise Tour, Inc. (H&C) after a bus owned by Nick's Travel and driven by its employee, Mark Li, on a tour arranged by H&C ran over Yoo's foot, causing serious injury and a lifelong disability. Following a trial, the jury found H&C not liable, but found Nick's Travel wholly liable and awarded Yoo damages of $2.5 million for past and future noneconomic loss. Nick's Travel contends the damages awarded were excessive, the result of passion and prejudice and improper instruction, and that the jury was improperly influenced by introduction of irrelevant evidence that the accident was a "hit-and-run." We conclude the evidence was relevant, the jury was adequately instructed, and that damages were not excessive. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Background Facts*

Certain background facts are not disputed. On March 23, 2009, Yoo, then 68, traveled to and from a Palm Springs casino on a bus driven by Mark Li. Appellant Nick's Travel owned the bus and employed Li. H&C sold Yoo and the other passengers their tickets, and had entered into a contract with appellant to supply the bus and driver to transport patrons to and from the casino. Returning home at the end of the day, Yoo exited the bus on Garvey Avenue near the intersection of San Gabriel Boulevard. He continued down Garvey and was attempting to cross San Gabriel when the bus, while making a right turn, ran over his foot. Alerted by the passengers and the tour guide that Yoo had been struck, Li stopped the bus and attempted to speak with Yoo.[1] Li stayed at the scene while

---

[1]     Li spoke primarily Chinese; Yoo spoke primarily Korean.

911 was called and emergency personnel from a nearby fire department arrived, but drove away before law enforcement personnel arrived. Li did not provide Yoo with his name, the name of his employer, or insurance information.

When Los Angeles County Sheriff's Deputy Art Torres arrived at the scene, Yoo provided a slip of paper containing H&C's name and two telephone numbers. Deputy Torres called the numbers, but got no response and was unable to identify the driver or bus owner. Sheriff's Deputy Marvin Payne took over the investigation, and located information about H&C on the internet. Several months after the accident, Deputy Payne called the number he had found and spoke to H&C employee, Wilson Ni. Ni, who claimed to be unaware of any accident, agreed to conduct a search of records to determine the identities of the bus driver and bus owner, but never called the deputy back.

Yoo's foot was badly injured. He underwent surgery, spent three months in a convalescent hospital, and participated in physical therapy until early 2010. Despite the treatment he received, Yoo continued to limp and to suffer ongoing pain, and needed a cane to walk any significant distance. In February 2011, Yoo brought suit against H&C for negligence. In April 2011, he amended the complaint to add Li and appellant as Doe defendants.[2]

B. *Pretrial Proceedings*

Prior to trial, Yoo's counsel announced that Yoo was waiving recovery of special damages, including medical expenses, and would seek only noneconomic damages at trial.

---

[2] Sometime after the suit was filed, Li left his employment and returned to China, where he was outside the subpoena powers of the court. He did not testify and was never deposed.

3

Appellant moved in limine to exclude evidence that Li had left the scene of the accident prior to the arrival of law enforcement personnel and without exchanging insurance or other information with Yoo. Appellant conceded that Li's failure to stop at the scene could be indicative of consciousness of responsibility. (See, e.g., *Karl v. C.A. Reed Lumbar Co*. (1969) 275 Cal.App.2d 358, 362.) However, appellant claimed that because it was admitting liability for the negligence of its employee Li, such evidence was irrelevant. Appellant alternatively contended the probative value of the evidence was slight, but the potential for prejudice great, requiring exclusion of the evidence under Evidence Code section 352 (section 352).

Yoo opposed the motion in limine, noting that appellant had not admitted liability without reservation, but contended Yoo was partly at fault, leaving the extent of Li's negligence at issue. In addition, Yoo argued the fact that Li fled the scene without identifying himself or his employer caused Yoo to suffer compensable emotional and mental distress from the inability to determine whether the party responsible for his injuries would ever be located. Finally, Yoo contended Li's actions in leaving the scene of the accident constituted willful suppression of evidence, entitling him to an inference that the evidence suppressed would have been adverse to the defendants. The court denied appellant's motion in limine, finding the evidence relevant and specifically ruling that Yoo could seek recovery for his emotional reaction to the driver leaving the scene without identifying himself.[3]

---

[3] Appellant filed a separate motion in limine to preclude Yoo from introducing evidence concerning efforts to identify Li and his employer in support of his claim for damages for emotional distress. The court denied that motion.

Appellant also sought to bar Sheriff's Deputy Payne from testifying on the ground his description of his investigation of the accident would add nothing of relevance but would be highly prejudicial to the defendants. Yoo countered that the evidence would shed light on appellant's and H&C's knowledge of Li's actions and raise an inference of guilt as to those parties. He contended that the conduct to which Deputy Payne would testify "reflect[ed] on [the defendants'] state of mind," "impeach[ed] their claim [of comparative negligence]," and was inconsistent with their claim to have had "nothing to hide, because the driver did nothing wrong." Yoo's counsel further asserted that the testimony would undermine H&C's claim to have had no relationship with the driver. The court conditionally granted the motion with the understanding that Deputy Payne's testimony would be essentially identical to and duplicative of Deputy Torres's, but stated it would revisit the issue after hearing Deputy Torres testify.

C. *Opening Statements*

In his opening statement, Yoo's counsel referred to the defense's theory -- that Yoo had run into the back of appellant's bus after it had begun its turn because he was hurrying to cross the street while looking in the opposite direction -- stating: "So they create this bizarre scenario of how this hit-and-run driver . . . was the victim of a bizarre pedestrian, acting crazy, running into the back wheel. This hit-and-run driver who had a bus load of passengers who would have backed him up, if that's how the accident happened. And yet he chooses to run away with the bus load of passengers. [¶] And the evidence will show this bus driver, who had a

5

bus load of passenger witnesses who saw the accident, he . . . didn't stay for the police to make sure that these witnesses gave their statement . . . ."[4]

D. *Trial Testimony*

Deputy Art Torres testified that because the accident was a hit-and-run, he had been unable to determine whether the bus driver was under the influence. He further testified that he had called the two numbers given to him by Yoo, but received no response, and never learned the driver's name or the identity of the bus owner. Appellant's counsel raised no objection to this testimony.

After hearing Sheriff's Deputy Torres's testimony, the court permitted Yoo to call Deputy Payne. Deputy Payne testified he picked up the investigation from Deputy Torres, and that when he called a number for H&C from the internet, he was told H&C was a business consulting firm. Several months later, he called that number again. The person who answered -- later identified as Wilson Ni -- refused to give his last name. Ni promised to call back with the name of the bus company and bus driver, but failed to do so. This was the last Deputy Payne heard from either defendant about the accident. Appellant's counsel raised neither relevancy nor section 352 objections to this testimony.

After the deputies testified, Yoo called Alexander Huang, appellant's owner, in support of Yoo's case-in-chief. Huang testified that he learned of the accident from his driver Li approximately one month after it occurred. Li purportedly told Huang that Yoo had walked into the back of the bus and had not been injured, and that Li had provided his identity and the identity of his employer to fire department personnel, who then gave him permission to leave the scene. According to Huang,

---

[4]     This was the only time in his opening statement counsel referred to the hit-and-run nature of the accident.

Li also said he had waited at the scene approximately 30 minutes before leaving.[5] Huang claimed to have later questioned the tour guide, who purportedly told him the accident was not Li's fault.

Huang admitted speaking with H&C's owner Linna Huie about the accident, but claimed not to recall whether Huie or anyone else informed him the police were looking for the bus driver and bus owner. Huang further testified that although he went to the police station and obtained a copy of the police report shortly after receiving the complaint, he had only recently learned that the accident had been classified as a hit-and-run. Yoo's counsel pointed out that the report described the accident as a "hit-and-run" and that in describing the driver, it stated: "unknown, fled from scene." Huang claimed he could not read English, and added he had no reason to avoid coming forward because he had insurance. Counsel placed the report in front of Huang, spelling out the words "hit and run" and "unknown," but Huang denied he could read and understand these words.[6] No relevance or section 352 objections were interposed by appellant's counsel.[7]

Yoo's counsel also called H&C's owner Linna Huie. She too claimed to have learned only recently that the accident had been classified as a hit-and-run. She further testified that Ni had not informed her of Sheriff's Deputy Payne's call at the time, and that she could not recall when she first learned of the call. Yoo's counsel cross-examined her extensively on this point, asking whether Ni had ever informed her of the call, whether she would expect an employee to inform her that

---

[5]     Deputy Torres testified that deputies arrived within minutes of the 911 call.

[6]     Huang testified through an interpreter, but the record reflects he sometimes answered questions before they were translated, and sometimes spoke English when responding to translated questions.

[7]     After Huang testified, counsel for appellant asked that Yoo not be referred to as "a victim." The court instructed Yoo's counsel to refer to him by name or as "plaintiff."

7

her company had been involved in a hit-and-run, and whether she had been upset or angry upon hearing her company had been involved in such an incident.[8]

Yoo testified that when he entered the cross-walk, the light was green and the "walk" light was lit. He could not remember the collision, but he remembered ending up lying on the ground with his legs under the bus, between the front and back wheels. Yoo's accident reconstruction expert, Eric Deyerl, testified that the most plausible scenario to explain the nature of Yoo's injuries was that Yoo's foot had been run over by the front wheel of the bus while he was legally crossing the street in a controlled crosswalk. Deyerl testified that during turns, the bus's front tires projected outside the body of the bus, allowing the tire to make contact with the foot of a pedestrian, and that the bus weighed 33,000 pounds.

Yoo's injuries caused him to be hospitalized for a week, during which doctors performed surgery, inserting pins into the bones of his foot by drilling through his toes. He was transferred to a convalescent hospital where he remained for three months. When he left, he was using a walker. He received outpatient physical therapy for over six months. At the time of trial, four years after the accident, Yoo walked with a cane, and was never without pain -- which radiated from his foot to his thigh -- even after taking prescription pain medication. Confined to reclining on his left side, he slept only three or four hours a night. Prior to the accident, he did all the household chores for himself and his disabled

---

[8] Appellant's counsel interposed some "asked and answered" objections to this testimony, and objected on relevancy grounds to the question whether Huie was angry when she found out her company was involved in a hit-and-run accident. He raised no section 352 objections. Huie's testimony was inconsistent: she stated at one point that Ni had never told her about Sheriff's Deputy Payne's call and at another that she was surprised and upset when she learned of it. She recalled asking Ni about the accident when she received a letter from an attorney, approximately a year after the accident, and said he denied knowing about it. Ni's testimony contradicted Huie's. He said he told Huie about Deputy Payne's telephone call when H&C received the attorney letter.

adult son; after the accident, his son did the majority of household chores. Yoo was limited in the amount of time he could comfortably walk to 15 or 20 minutes, and spent most of his days in his apartment reading. Yoo was 72 at the time of trial, and his life expectancy was 12.6 years.

Yoo's medical expert, Tye Ouzounian, M.D., testified that Yoo suffered a crush injury that broke many of the bones of his foot into multiple pieces, and damaged soft tissue, nerves, muscles and ligaments as well. The accident caused him to develop arthritis in his heel and exacerbated existing arthritis in his big toe. In addition, Yoo was developing left shoulder pain from sleeping exclusively on his left side to avoid applying pressure to the injured foot. Dr. Ouzounian opined that Yoo's condition would not improve and, in fact, would worsen as his limp caused pain in his left knee and right calf, and exacerbated a preexisting back condition. Dr. Ouzounian testified that he had recommended surgery to fuse multiple bones in Yoo's right foot, but Yoo had refused, citing the severe pain of his original surgery and the fact that his son had experienced serious complications from an earlier surgery. Dr. Ouzounian opined that even with surgery to address Yoo's arthritis pain, he would continue to suffer significant nerve pain from the crush injury. In addition, Yoo would still require a cane.

Appellant's medical expert, Carol Frey, M.D., testified that appellant's medical condition had not changed significantly since January 2010. She testified Yoo's back problems were preexisting, and she did not believe the pain in his knee was due to the accident but was a result of the preexisting back condition. Dr. Frey did not dispute that Yoo was in continuous pain, but expressed the opinion that the pain waxed and waned, that it would be 95 percent diminished if he had the bone fusion surgery, and that he would no longer need a cane post-surgery.

9

E.  *Closing Argument*

During closing argument, Yoo's counsel identified himself as Yoo's "last line of defense" to avoid "being deprived of his justice by the team of expert witnesses, that were hired by the defense to testify in place of the missing hit-and-run driver."  He later argued:  "Now, defendants, while admitting negligence, proposed a scenario where the plaintiff . . . is significantly responsible for the accident.  Let me go over the issues that we covered and why they don't have even 1 percent of evidence to support what they're suggesting."  He then related the evidence that supported the driver's consciousness of guilt:  that he left the scene with the bus containing the passenger witnesses without giving a statement to police or submitting to a sobriety test.  Counsel argued that Huang's testimony -- that the bus driver told him about the accident within a month of its occurrence but he did not realize it was a hit-and-run until close to trial, that the bus driver told him Yoo was uninjured, that H&C's Huie had not told him police were looking for the driver when she spoke to him, and that he obtained a copy of the police report without learning the accident had been classified as a hit-and-run -- lacked credibility.  Counsel made similar arguments with respect to Huie and Ni, contending their claims not to have understood that deputies were looking for the bus driver or that the accident had been classified as a hit-and-run until sometime after litigation commenced did not pass a "common sense" test.  Counsel further argued that the efforts to misdirect the deputies indicated appellant and H&C must have known about the accident and its nature from the start.  Although Yoo's counsel had argued to the court that the hit and run nature of the accident had enhanced Yoo's emotional distress, and Yoo had testified that when he learned the police could not find the driver he felt "sad and . . . miserable," counsel urged the jury to award damages of $14 million based on the pain and suffering from the physical injury alone.

10

Appellant's counsel informed the jurors in his closing argument that they would be instructed that Li's concealment of evidence by leaving the scene of the accident was evidence of consciousness of guilt, but not a basis for an award of damages. He did not claim Yoo was entitled to no damages, but argued that Yoo was comparatively negligent, and suggested that the jurors award a total of $200,000 for past and future pain and mental suffering.

### F. *Jury Instructions*

The jurors were instructed that "[i]f a party provided weaker evidence when it could have provided stronger evidence, you must distrust the weaker evidence," that it was appropriate to "consider whether one party intentionally concealed or destroyed evidence," and that if they decided that a party had done so, they could "decide that the evidence would have been unfavorable to that party." They were further instructed that "[w]hether Mark Li, [appellant] or H&C Paradise Tour, Inc., willfully suppressed or concealed any evidence cannot serve as a basis for any award of damages to Mr. Yoo," and that they "must not include in [their] award any damages to punish or make an example of defendants," but instead "must award only the damages that fairly compensate Mr. Yoo for his loss."

The jurors were advised of appellant's claim that Yoo's own negligence contributed to his harm, and were instructed that to succeed on this claim, appellant was required to prove "one, that . . . Mr. Yoo was negligent and, two, that Mr. Yoo's negligence was a substantial factor in causing his harm."

The jurors were read Vehicle Code sections 20001 and 20003.[9] The jurors were further instructed that "[w]hether Mark Li violated Vehicle Code sections

[9] Specifically, the jurors were informed that Vehicle Code section 20001 states "(a) the driver of a vehicle involved in an accident resulting in injury to a person other than

*(Fn. continued on next page.)*

11

20001 and 20004 [sic] may be considered by you as evidence of his having demonstrated a consciousness of responsibility for the accident." The court rejected a proposal by appellant's counsel that the following sentence be added to the instruction: "'Whether Mark Li failed to identify himself at the scene of the accident is not evidence of any harm sustained by [Yoo] and it may not serve as [a] basis for any award of damages to [Yoo].'"

G. *Special Verdict and Motion for New Trial*

The jury returned a special verdict in favor of Yoo. It found no liability on the part of H&C, but as to appellant made the following findings: (1) Li was negligent; (2) Yoo was not comparatively negligent; and (4) Yoo was entitled to $750,000 for past noneconomic loss, including physical pain and mental suffering, and $1,750,000 for future noneconomic loss.

Appellant moved for a new trial, contending the amount of damages was excessive and the product of passion and prejudice. The court denied the motion. It observed that Yoo had sought $14 million and concluded that $2.5 million was not "unreasonable given the severity of the injury," including, that Yoo had been

himself, or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of sections 20003 and 20004," and that Vehicle Code section 20003 states "(a) the driver of any vehicle involved in an accident resulting in an injury to or death of any person shall also give his or her name, current residence address, the names and current residence addresses of any occupant of the driver's vehicle injured in the accident, the registration number of the vehicle he or she is driving, the name and current residence address of the owner to the person struck or the driver or occupants of any vehicle collided with, and shall give the information to any traffic or police officer at the scene of the accident. [¶] The driver also shall render to any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or that transportation is requested by any injured person."

"run over by a double-decker bus, [had] his foot . . . crushed[,] [and had] pins [inserted] in his toes . . . ." This appeal followed.

## DISCUSSION

A. *Evidence of the Hit-and-Run Nature of the Accident*

Appellant contends the court erred in denying its motion in limine to exclude evidence of the hit-and-run nature of the accident. Appellant contends the evidence that Li left the scene of the accident prior to the arrival of law enforcement personnel and without exchanging insurance or other information with Yoo, as well as the evidence that neither appellant nor H&C provided authorities the name of the driver or owner after learning of the accident, was irrelevant. Alternatively, appellant contends that to the extent such evidence was relevant, its introduction was far more prejudicial than probative and should have been excluded under section 352. For the reasons discussed, we disagree.

Trial court rulings on the admissibility of evidence, whether in limine or during trial, are reviewed for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197; *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) Any error in admitting or excluding evidence is grounds for reversing a judgment only if the appellant demonstrates "'a "miscarriage of justice" -- that is, that a different result would have been probable if the error had not occurred.'" (*Pannu*, *supra*, at p. 1317, quoting *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.)

California law requires that the driver of a vehicle involved in an accident resulting in injury to any person shall immediately stop the vehicle at the scene of the accident, and, if able, render aid and reasonable assistance to any person injured in the accident. (Veh. Code, §§ 20001, 20003.) "The purpose of [these statutes] is to prohibit drivers from leaving injured persons in distress and danger

13

from lack of medical care, and from seeking to avoid civil or criminal liability resulting from the accident." (*Karl v. C.A. Reed Lumber Co., supra*, 275 Cal.App.2d at p. 361.) It has long been the rule in California that the failure of a driver involved in an automobile accident to comply with the Vehicle Code "has a two-fold significance: (1) It may result in liability for the aggravation of injuries sustained in the accident or additional injuries incurred after it; (2) it may constitute evidence of responsibility for the accident." (*Karl v. C.A. Reed Lumber Co., supra,* at p. 362.) "Failure to stop and render aid is some evidence of a consciousness of responsibility for the original accident, regardless of post-collision injuries. . . . [¶] . . . [¶] [F]light immediately after an accident is a circumstance that may be considered with other facts in the case as tending to show a consciousness of responsibility for the accident." (*Ibid.*; accord, *Brooks v. E.J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669, 676 ["The jury was instructed that the conduct of [the defendant's employee] in driving away from the scene of the accident might be considered as a circumstance showing consciousness of responsibility on his part for the accident and death of [the decedent] and that the weight to be given such circumstance was a matter for the jury to determine. . . . Such an inference appears to be a reasonable one, and it was not error to give the instruction."].) "The inference, of course, may be refuted, and a defendant is entitled to explain his conduct." (*Brooks*, *supra*, at p. 676.) "[T]he validity of the excuse or justification for failing to comply with the [Vehicle Code] presents a question of fact for the jury's determination." (*Karl v. C.A. Reed Lumber Co., supra*, at p. 363.)

Here, the evidence that Li left the scene of the accident without waiting for law enforcement personnel to arrive and without exchanging information with Yoo supported the inference that he believed himself responsible for the accident that injured Yoo. By fleeing the scene, Li prevented authorities from administering a

sobriety test, from inspecting the bus for physical evidence, and from interviewing passengers who witnessed the accident. Evidence that the owners of H&C and appellant failed to come forward after learning of the accident from their employees supported the inference that they too believed Li to be responsible. Moreover, the evidence of Li's absconding from the scene of the accident explained why Yoo was unable to provide stronger evidence of negligence in his case-in-chief, such as photographs, a police accident report or eyewitness testimony of bus passengers. In short, the evidence was clearly relevant.

Appellant contends that any relevance was marginal and that the evidence should have been excluded under section 352.[10] Evidence is subject to exclusion under section 352, if "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "[E]vidence is probative if it is material, relevant, and necessary. '[H]ow much "probative value" proffered evidence has depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree of materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity).'" (*People v. Thompson* (1980) 27 Cal.3d

---

[10]   Appellant raised section 352 objecting to the introduction of any evidence pertaining to the hit-and-run nature of the accident in its pretrial motions. However, its counsel raised virtually no section 352 objections at trial. To the extent appellant now concedes the relevance of such evidence but contends the amount of testimony dedicated to the subject was excessive, his counsel's failure to object to specific questions as improper under section 352 constitutes a forfeiture. (See Evid. Code, § 353, subd. (a) [It has long been the rule that "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] . . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ."].)

303, 318, fn. 20, disapproved on another ground in *People v. Rowland* (1992) 4 Cal.4th 238.) "Often the most highly probative evidence is also highly damning, and therefore 'prejudicial' in a superficial sense of the word. Evidence Code section 352 does not, however, allow for the exclusion of evidence merely because it is 'prejudicial' in the sense of damaging to a litigant's position. The relevant phrase from the statute is 'substantial danger of *undue* prejudice.' (Italics added.) Undue prejudice springs from evidence which has ""'very little effect on the issues.'""" (*O'Mary v. Mitsubishi Electronics America, Inc*. (1997) 59 Cal.App.4th 563, 575, italics deleted, quoting *People v. Minifie* (1996) 13 Cal.4th 1055, 1071.) A trial court has broad discretion in determining whether to admit or exclude evidence under section 352, and its determination will not be overturned absent abuse. (*People v. Minifie*, *supra*, 13 Cal.4th at p. 1070.)

Evidence tending to show the defendants' consciousness of guilt was material because other than damages, the main issues at trial were the degree of Li's negligence and whether Yoo was comparatively negligent. Introduction of evidence showing consciousness of guilt was necessary because no eyewitness to the accident other than Yoo testified at trial, and he had no clear recollection of the moment of impact. In the absence of the inference raised by Li's behavior and that of the other defendants, Yoo had only expert theory to support that his foot had been run over by the front wheel of the bus while he was legally crossing at the intersection and to refute the defense theory that he had run into the back of the bus after it had begun its turn.

Appellant contends that none of this justified the "hours of testimony" or Yoo's counsel's attempt to "vilif[y]" and "criminaliz[e]" the defendants in his opening statement and closing argument. From the testimony adduced at trial, it is clear that the defendants sought to refute the inference of negligence by demonstrating that Li did not realize Yoo had been badly injured and/or that Li

16

believed he had provided the necessary information, allegedly leaving his name with fire department personnel. Huang claimed this was the information he had received from Li a month after the accident, seeking to justify his own failure to notify authorities or Yoo that appellant was Li's employer and the owner of the bus. H&C's owner Huie similarly sought to justify her company's failure to provide information to law enforcement personnel by claiming she did not hear about the accident until a year later and only shortly before trial learned the accident had been classified as a hit-and-run. This opened the door for Yoo to discredit the proffered justifications for the defendants' behavior by seeking to establish through comprehensive examination that Huang and Huie were aware from early on that there had been an accident, that the driver had fled the scene, and that the police were seeking the identity of the driver and bus owner. Yoo's counsel's repeated questions about the hit-and-run nature of the accident were necessitated by the defense witnesses' evasive and inconsistent explanations of why they had not come forward to clear the record at an earlier time -- responses which arguably demonstrated their own consciousness of guilt.

Finally, we address appellant's claim that the evidence of the hit-and-run nature of the accident and the subsequent attempts by law enforcement personnel to identify the bus owner and driver caused the jurors to become confused, inflamed, and impassioned. First, as explained below, the damages awarded were not so shockingly high as to suggest the jurors were under the influence of passion and prejudice during their deliberations. Moreover, much of the testimony which appellant asserts should have been excluded focused on H&C's evasiveness when Sheriff's Deputy Payne contacted the company in an attempt to ascertain information about the bus driver and owner. Despite hearing testimony that H&C's employees had misdirected Deputy Payne and promised information they never provided, the jurors found H&C not liable for the accident. In short, nothing

17

in the record suggests that the verdict was influenced by the evidence appellant claims was improperly admitted.

B. *Alleged Instructional Error*

Appellant contends the jurors were misinstructed, first, when the court provided them the essential text of Vehicle Code sections 20001 and 20003, and second, when the court rejected appellant's proposal that the jury be instructed that whether Li failed to identify himself at the scene of the accident was "not evidence of any harm sustained by [Yoo] and it may not serve as a basis for any award of damages to [him]."

It was not error to provide the jurors with information about the relevant provisions of the Vehicle Code or to refuse the proposed instruction. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) However, a trial court may refuse a proffered instruction if it is an incorrect statement of law. (*People v. Gurule* (2002) 28 Cal.4th 557, 659.) Moreover, "'[a]s long as the instructions cover the issues involved and correctly and fully state the law, the fact that either party would prefer that they be otherwise expressed or expressed in a repetitious manner or different language is immaterial.'" (*Gress v. Rousseau* (1962) 204 Cal.App.2d 149, 154; accord, *People v. Andrade* (2000) 85 Cal.App.4th 579, 585 ["A court is required to instruct the jury on the points of law applicable to the case, and no particular form is required as long as the instructions are complete and correctly state the law."].)

18

Contrary to appellant's contention, the jury was not left free to use Li's failure to comply with the Vehicle Code for an unlimited or improper purpose. The jurors were instructed that whether Li violated the Vehicle Code could be considered "as evidence of his having demonstrated a consciousness of responsibility for the accident," but were further instructed that "[w]hether [the defendants] willfully suppressed or concealed any evidence cannot serve as a basis for any award of damages to [Yoo]," and that they "must not include in [their] award any damages to punish or make an example of defendants," but instead "must award only the damages that fairly compensate [Yoo] for his loss." This was sufficient to apprise the jurors of their duties, particularly in view of counsels' argument concerning the proper use of the evidence. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804, quoting *Saari v. Jongordon Corp.* (1992) 5 Cal.App.4th 797, 808 ["Absent some contrary indication in the record, we presume the jury follows its instructions [citations] 'and that its verdict reflects the legal limitations those instruction imposed.'"].)

C. *Denial of Motion for New Trial*

Appellant contends the $2.5 million awarded to Yoo to compensate him for past and future pain and suffering and mental and emotional distress was wildly excessive, and that the trial court abused its discretion in denying its motion for a new trial. Appellant calls to our attention a number of cases in which plaintiffs who suffered foot crush injuries were less liberally awarded.

"The amount of damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. They see and hear the witnesses and frequently, as in this case, see the injury and the impairment that has resulted therefrom." (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506-507.) The trial judge "has greater discretion to reduce

19

the damages on a motion for new trial than the appellate court has on appeal"; we "ordinarily defer[] to the trial court's denial of a motion for new trial based on excessive damages, because of the trial judge's greater familiarity with the case." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614.)  "The appellate court will interfere with the jury's determination only when the award is so disproportionate to the injuries suffered that it shocks the conscience and virtually compels the conclusion the award is attributable to passion or prejudice."  (*Id*. at p. 615.)

"There is no fixed standard by which the appellate court can determine whether the jury's award for [an] intangible loss is excessive." (*Rufo v. Simpson*, *supra*, 86 Cal.App.4th at p. 615.)  "While a reviewing court, in passing upon the question [of excessive damages], may consider amounts awarded in similar cases [citations], in the final analysis the question in each case must be determined from its own peculiar facts and circumstances [citation][,] and it cannot be held as a matter of law that a verdict is excessive simply because the amount may be larger than is ordinarily allowed in such cases." (*Daggett v. Atchison, T.& S.F. Ry. Co*. (1957) 48 Cal.2d 655, 666; accord, *Wilson v. Gilbert* (1972) 25 Cal.App.3d 607, 611-612; *Henninger v. Southern Pacific Co*. (1967) 250 Cal.App.2d 872, 883; see *Bertero v. National General Corp*. (1974) 13 Cal.3d 43, 65 ["The vast variety of and disparity between awards in other cases demonstrate that injuries can seldom be measured on the same scale.  The measure of damages suffered is a factual question and as such is a subject particularly within the province of the trier of fact. For a reviewing court to upset a jury's factual determination on the basis of what other juries awarded to other plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of factfinding."].)

Here, the award was generous but not shocking.  Yoo was severely injured when appellant's 33,000 pound bus crushed his foot.  Numerous bones were

20

broken in multiple places; tissue, muscles, nerves and ligaments were severely damaged. Yoo suffered intense pain from the reparative surgery, and spent months confined to a rehabilitative hospital. By the time of trial, four years later, he was still in pain and his mobility was greatly reduced. He used a cane, but could nonetheless walk for no more than 15 to 20 minutes at a time. His gait was altered, exacerbating existing back pain and leading to pain in his knee and calf. Forced to lie on one side to lessen the pain, he could no longer sleep soundly at night, and during the day was largely reduced to sitting and reading. The effect of the accident was to transform an ambulatory and semi-active 68-year old man into an invalid. Contrary to appellant's assertions, the evidence did not establish that Yoo was essentially pain free or would become so if he agreed to undergo additional surgery. Yoo testified that he was in constant pain, even with medication, and his expert confirmed that the proposed surgery to alleviate his arthritis would not address the pain from his damaged nerves. Although the defense expert offered a contrary opinion concerning the benefits of surgery, she agreed that Yoo was in constant pain at the time of trial and had been for many years. Appellant's counsel did not dispute that Yoo had suffered and would continue to suffer pain. The damage amount at which the jury arrived after hearing the evidence and argument of counsel neither shocked the conscience nor compelled the conclusion that the award was attributable to passion or prejudice.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.